ATTORNEY DISCIPLINARY PROCEEDINGS
JjPER CURIAM.
This attorney disciplinary proceeding involves four counts of misconduct filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Gilda R. Small, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS

General Background Facts

After being admitted to the bar in 1983, respondent operated a solo practice. In late 1990, she became associated with the law office of attorney Janice Clark (hereinafter referred to as “Clark firm”). In the summer of 1992, Ms. Clark began campaigning for a judgeship. During the time Ms. Clark campaigned for office, respondent operated the Clark firm by herself. Ms. Clark won the election, took her oath of office in October 1992, and began her term on January 1, 1993. Respondent entered into a verbal agreement with her, whereby respondent would remain in the Clark firm’s office and take over the firm’s pending cases. Dele Adebamiji, another Louisiana attorney, was also hired to assist in the disposition of the pending cases. Respondent remained with the Clark firm until July 1994. The disciplinary complaints subject of these proceedings involve those cases handled by respondent during her tenure with the Clark firm.
19Count I — Blakes Matter.
Lawrence Blakes was involved in an accident on December 23, 1992. According to Mr. Blakes, he went to the office of the Clark firm and met respondent, who advised him that she was handling his personal injury matter. At that time, he executed an employment agreement with respondent[1] and provided her documentation. Mr. Blakes maintains respondent neglected to ever contact him again.
By contrast, respondent asserts Mr. Blakes’ personal injury matter was on a list of cases left for her to take over following Judge Clark’s election. Respondent denies she ever met Mr. Blakes prior to January 1994, more than one year after she took over the case at the request of Judge Clark, at which time he allegedly came to her office at her direction to execute pleadings relative to his pauper status. She asserts she advised him at that time that she would be co-counsel with Mr. Adebamiji on the case.
In any event, it is undisputed respondent failed to adequately communicate with Mr. Blakes and neglected to take any formal action in the case until January 1994, more than one year after the accident, when she filed an untimely suit on her client’s behalf against the tortfeasor *503 and two insurance carriers.[2] Thereafter, Mr. Blakes made numerous efforts to contact respondent, but was unable to reach her. Ultimately, Mr. Blakes was forced to retain new counsel.
In September 1994, Mr. Blakes filed a complaint with the ODC. Several months later, respondent replied to the complaint alleging she relocated her office and did not 13have the financial means to send written notice of her relocation to her clients, including Mr. Blakes.[3]
Count II — Square Matter
In July 1993, Fannie Square retained respondent to institute succession proceedings, paying respondent a total of $575.[4] Five months later, respondent had not filed suit on behalf of her client.
In December 1993, Ms. Square filed a complaint with the ODC, alleging respondent refused to communicate with her and seeking a return of the unearned fee. Six months later, respondent replied to the complaint, alleging she had drafted the succession pleadings, but had not filed them because her client owed additional court costs for the filing. Respondent advised the ODC that she would return her client’s file and money. Thereafter, respondent failed to return her client’s property, and did not take any measures to file the suit.
Count III — Moore Matter
In August 1992, Ralph and Creóla Moore retained respondent for $410 to represent their interests in amicable custody proceedings. The Moores were seeking custody of Mr. Moore’s son from a prior marriage. Respondent drafted the necessary pleadings and advised Mrs. Moore the pleadings had been filed.
More than one year later, Mrs. Moore learned the pleadings had never been filed. Upon being confronted with this fact, respondent agreed to provide restitution. ^However, she failed to do so and failed to communicate with her client. During this time, Mr. Moore died of leukemia, leaving the custody mater unresolved.
Mrs. Moore filed a complaint with the ODC. Respondent filed a response admitting that some of the funds were owed to her client, but that she had been unable to make payment due to financial problems. Respondent has made no efforts at restitution.
Count IV — Thomas Matter
In September 1992, Geraldine Thomas retained respondent for $625 to represent her in divorce proceedings. Although respondent drafted the divorce pleadings, she neglected to have Mrs. Thomas’ husband served. Four years after Mrs. Thomas retained respondent, respondent had not performed the work for which she had been retained, nor did she return the unearned fee to Mrs. Thomas.
In June 1996, Mrs. Thomas filed a complaint with the ODC. Respondent replied to the complaint, denying any misconduct *504 on her part and claiming she had earned the entire fee.
DISCIPLINARY PROCEEDINGS

Formal Charges

After investigation, the ODC filed four counts of formal charges against respondent alleging numerous violations of the Rules of Professional Conduct.[5] With respect to the Blakes matter, the ODC alleged respondent’s misconduct violates Rules 1.1 (incompetence), 1.3 (lack of diligence) and 1.4 (failure to communicate). In the Square matter, the ODC alleged respondent’s actions violate Rules 1.3, 1.4, 1.15(b) |s(failure to promptly deliver funds or property owed to a client or third party and failure to render a full accounting upon request) and 1.16(d) (failure to protect client interests upon termination of representation). As to the Moore matter, the ODC alleged respondent’s misconduct violates Rules 1.3, 1.4, 1.15(a) (failure to keep client and third party funds separate from the lawyer’s own property), 1.15(b) and 1.16(d). Finally, in the Thomas matter, the ODC alleged respondent’s misconduct violates Rules 1.3, 1.4 and 1.5(f)(6) (failure to account for or refund unearned fee, and/or place disputed funds in trust).
Respondent filed two answers to the formal charges, essentially denying misconduct on her part. Specifically, she alleged she earned most, if not all, of the fees in each client matter.

Formal Hearing

Prior to the formal hearing, the parties entered into a joint stipulation of facts providing, among other things, the client matters were not completed and fees not returned. Additionally, the stipulation provided that: “At all times during her representation of the complainants in these matters ... respondent was well aware that she was suffering from emotional disabilities such that she was incapable of practicing law alone.”
The complainants and respondent’s former secretary testified on behalf of the ODC. Respondent testified on her own behalf, essentially reasserting the defenses she raised in response to the charges. Additionally, she denied the existence of an attorney-client relationship with Mr. Blakes subject of Count I.
| ^Recommendation of the Hearing Committee
The hearing committee found clear and convincing evidence of professional misconduct. It determined respondent’s actions harmed her clients’ interests. Relying on the ABA’s Standards for Imposing Lawyer Sanctions, the committee recognized the baseline sanction is suspension. In aggravation, it recognized respondent’s prior disciplinary record,[6] pattern of misconduct, multiple offenses, and little, if any, restitution. Considering these factors, the committee recommended respondent be suspended for a period of one year and one day, subject to a two-year period of probation, with conditions to reinstatement.

Recommendation of the Disciplinary Board

The disciplinary board adopted the committee’s factual findings and concluded re *505 spondent knowingly violated duties owed to her clients. In addition to the aggravating factors cited by the committee, the board recognized respondent’s refusal to acknowledge the wrongful nature of her misconduct and the vulnerability of the victims. As a mitigating factor, the board identified respondent’s personal and emotional problems.[7]
Based on its consideration of the record, the board recommended that respondent be suspended from the practice of law for one year and one day, followed by a two-year period of supervised probation upon reinstatement. It also proposed that respondent be required to render a full accounting to her clients and refund all unearned fees.
|7Respondent filed an objection to the board’s recommendation. Accordingly, the matter was docketed for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G).
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana, State Bar Ass’n v. Boutall, 597 So.2d 444, 445 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Respondent’s arguments are primarily factual in nature. She contends the committee erred in finding she neglected her clients’ matters. Additionally, she disputes the existence of an attorney-client relationship in the Blakes matter.
The committee’s determination that respondent violated the professional rules as charged turned in large measure on the credibility determinations the committee made after hearing respondent and the complainants testify. In disciplinary matters where credibility determinations are central to the determination of misconduct, we have rarely rejected the factual findings of the committee, observing that the committee “acts as eyes and ears of this court and is in a superior position to observe the nuances of demeanor evidence not revealed in a record.” In re: Bolton, 02-0257 (La.6/21/02), 820 So.2d 548, 553.
|sIn the instant case, the committee was presented with two competing versions of the facts. Respondent is unable to demonstrate that the hearing committee was clearly wrong in accepting the testimony of the complainants over her own testimony. See Stobart v. State of Louisiana, through Dept. of Trans. and Dev., 617 So.2d 880, 883 (La.1993) (“... [W]here two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.”). Accordingly, we accept the committee’s findings that respondent abandoned her clients’ legal matters, failed to communicate with her clients, failed to account for and refund unearned fees, and made no efforts at restitution.
Having found evidence of professional misconduct, the next issue presented for our consideration is the appropriate *506 sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s misconduct is serious in nature. Because of her neglect of Mr. Blakes’ case, no suit was filed on his behalf within the prescriptive period. Her neglect of the Square and Thomas matters caused these matters to be delayed for a period of several years. Her neglect of the Moore matter is particularly egregious, as Mr. Moore died without knowing the resolution of the custody case. Her failure to refund unearned fees to her clients, all of whom were in necessitous financial circumstances, | ¡¡caused them actual harm by depriving them of their funds for an extended period of time.
The baseline sanction for similar misconduct is generally a suspension from the practice of law for a period of one year and one day. See In re: Dooley, 02-2152 (La.2/14/03), 841So.2d 745 (one-year and one day suspension imposed stemming from neglect of a legal matter, failure to communicate with a client upon abandonment of law practice, as well as failure to cooperate with the ODC); In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87 (one-year and one day suspension imposed stemming from neglect of a legal matter, failure to communicate with the client, failure to account for his fee, failure to take any efforts to resolve a fee dispute with his client, and abandonment of law practice); In re: Bivins, 98-2513 (La.12/11/98), 724 So.2d 198 (one-year and one day suspension with probation imposed for three counts of misconduct arising from neglect of two client matters and abandonment of law practice); In re: Kendrick, 98-0623 (La.4/3/98), 710 So.2d 236 (one-year and one day suspension stemming from neglect of legal matter, failure to return fee, failure to communicate, and subsequent abandonment of his practice).
While we accept the mitigating factor of respondent’s personal and emotional problems during the time of the misconduct, this mitigating factor is offset by the large number of aggravating factors, including a pattern of misconduct, multiple offenses, prior disciplinary record, vulnerable victims and failure to make restitution. Under these circumstances, .we see no basis to deviate from the baseline suspension. Accordingly, we will suspend respondent from the practice of law for a period of one year and one day.[8]
hnDECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Gilda R. Small, Louisiana Bar Roll number 2114, is suspended from the practice of law for a period of one year and one day. It is further ordered respondent render ac- *507 countings to her clients and refund any unearned fees. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. The employment contract was not placed into evidence.

. For reasons which are not clear from the record, respondent listed Mr. Adebamiji as counsel of record for Mr. Blakes and signed his name on the petition. It does not appear Mr. Adebamiji was aware of this pleading. According to respondent, she had blanket authority from Mr. Adebamiji to sign his name to pleadings.

. Initially, respondent failed to cooperate in the ODC’s investigation of Mr. Blakes' complaint. In 1995, the disciplinary board issued an admonition to respondent based on her failure to cooperate.

.The formal charges allege Ms. Square paid respondent $175. Presumably, this is a typographical error, as the undisputed evidence in the record demonstrates Ms. Square paid respondent a $510 flat fee and $65 in court costs, for a total of $575.

. Originally, there were six counts of formal charges filed against respondent; however, two of these counts were later withdrawn by the ODC.

. Respondent has been admonished on four occasions by the disciplinary board. Three of these arose from her failure to cooperate with the ODC and one arose from her failure to return client property. Additionally, respondent has been declared ineligible to practice law on several occasions based on her failure to pay bar dues or comply with her mandatory continuing legal education requirements.

. However, the board observed there was insufficient evidence in the record to determine whether respondent suffered from a mental disability.

. The hearing committee also recommended that respondent’s reinstatement be conditioned upon a mental health evaluation to determine if she is emotionally competent to resume the practice of law. Although such a condition may be beneficial, we decline to impose it at this time. Conditions of reinstatement, along with any other relevant factors, may be addressed if and when respondent applies for reinstatement. See Supreme Court Rule XIX, § 24(E); In re: Harris, 99-1828 (La.9/17/99), 745 So.2d 1172.