*1136 ATTORNEY DISCIPLINARY PROCEEDINGS
ItPER curiam.
This disciplinary matter arises from one count of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Richard R. Nevitte, Jr., an attorney licensed to practice law in the State of Louisiana, but currently on interim suspension.[1]
NOTICE OF CHARGES
At the outset, we are faced with a problem of procedural due process. The formal charges against respondent relate solely to his conviction of a crime. However, at the formal hearing, evidence was introduced relating to other conduct not charged in the formal charges. The hearing committee found additional rule violations based on this uncharged conduct. The question presented is whether it would be a denial of due process of law for this court to find a lawyer guilty of charges based on evidence adduced at the hearing if he was not given notice of these charges prior to the hearing.
In In re: Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), the United States Supreme Court addressed a situation in which the lawyer was disbarred based on a charge that was not filed until after he had testified. In finding a violation of procedural due process, the Court stated:
These are adversary proceedings of a quasi-criminal nature. The charge must be known before the proceedings |?commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statement and start afresh.
390 U.S. at 551, 88 S.Ct. 1222 [citation and footnote omitted].
We addressed a similar situation in Louisiana State Bar Ass’n v. McGovern, 481 So.2d 574 (La.1986). In that case, the commissioner, after taking evidence, found the lawyer guilty of the original charged *1137 misconduct, as well as several other breaches of the ethical rules. In refusing to consider this uncharged misconduct, we compared the case to Buffalo, stating:
Likewise, McGovern had no notice that his acts or omissions in the uncharged violations would be considered disbarment offenses until after he had testified at length on all of the material facts pertaining to them and the commissioner had filed his findings based on that testimony. How the charges would have been met had they been originally included in those leveled against respondent by the bar association no one knows. Accordingly, in order to protect the respondent from an unconstitutional deprivation of due process, the violations recommended by the commissioner which were added to the initial charges of the bar association’s petition will not be considered by this court.
481 So.2d at 577.
See also Louisiana State Bar Ass’n v. Boddie, 534 So.2d 944 (La.1988).
Applying the reasoning of those cases, we find the hearing committee erred in finding respondent guilty of ethical violations based on the uncharged conduct. Accordingly, we will not consider the uncharged conduct and will make no further reference to it in this opinion. Rather, we confine our opinion to the charged misconduct relating to respondent’s criminal conviction.
^UNDERLYING FACTS
In October 1988, respondent arranged to purchase a used 1986 Jaguar XJ 6 automobile for the sum of $22,500 through David Jewell, a longtime friend of respondent’s who worked as a used car salesman. On October 13, 1988, respondent fraudulently secured an inflated personal loan from the Department of Justice Federal Credit Union by misrepresenting that the purchase price of the vehicle was $31,000.[2] He then delivered the check, representing the proceeds of the loan, to Mr. Jewell. Mr. Jewell and another co-conspirator, John Cox, endorsed the check and deposited it into Mr. Cox’s bank account. In turn, Mr. Cox gave respondent a “rebate” of $3,150, representing the difference between the amount of the loan and the actual purchase price of the Jaguar. In January 1989, respondent filed an application for a certificate of title with the Commonwealth of Virginia Department of Motor Vehicles, falsely listing a purchase price of $16,500 for the car in order to reduce his liability for sales taxes.
In May 1989, respondent told Mr. Jewell that he was having some mechanical problems with the car. Mr. Jewell suggested to respondent that he could have someone make the Jaguar “disappear,” enabling respondent to collect the value of the car from his insurance company. Respondent agreed to this plan. On May 30, 1989, respondent left the car in a parking lot in Dunn Loring, Virginia, where it was “stolen” by Mr. Jewell and Mr. Cox. That night, respondent reported the theft to the Fairfax County, Virginia police department, and the following day, he reported the theft to his insurer, USAA Property and Casualty Insurance Company. On June 2, 1989, respondent mailed an Affidavit of Vehicle Theft to USAA, falsely listing a purchase |4price of $27,500 for the car. USAA was preparing to pay the claim when, on June 18, 1989, the car was recovered in Alabama and returned to respondent. Two months later, respondent *1138 filed an insurance claim for damages the Jaguar had sustained in the “theft.” Respondent received a settlement of $994.95 from USAA .as a result of this claim. Moreover, respondent was successful in having the assessment on the Jaguar lowered by the Office of Assessments in Fair-fax County, Virginia, first to $12,000 (in October 1990), then to $10,000 (in April 1991), based upon his false representation that the car had major mechanical defects when he purchased it from Mr. Jewell, allegedly for the sum of $12,000. Respondent ultimately received $991.69 in refunds for the “overassessment” of personal property taxes on the Jaguar. In all, the total monetary loss attributable to respondent’s wrongful conduct was $33,761.64.
Thereafter, respondent was charged by bill of information in the United States District Court for the Eastern District of Virginia with one count of bank fraud, a violation of 18 U.S.C. § 1344, and one count of mail fraud, a violation of 18 U.S.C. § 1341. On June 19, 1991,' respondent pleaded guilty to one count of conspiracy to commit bank fraud and mail fraud, a felony, in violation of 18 U.S.C. § 371. Ori August 29, 1991, respondent was sentenced to Serve ninety days in prison and ninety days in home detention confinement, followed by two years of supervised release with special conditions.
In December 1998, the ODC moved to place respondent on interim suspension based upon his conviction of a serious crime. This court granted the motion on January 27, 1999 and ordered that disciplinary proceedings be instituted in accordance with Rule XIX. In re: Nevitte, 98-3005 (La.1/27/99), 730 So.2d 868.
I,DISCIPLINARY PROCEEDINGS

Formal Charges

On March 8, 2001, the ODC filed one count of formal .charges against respondent, alleging that his felony conviction represented a violation of Rules 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct. In his answer to the formal charges, respondent admitted his conviction, but denied that any further discipline was required' “beyond what has already been imposed on an interim basis.” Alternatively, respondent asserted that mitigating factors exist which would support a finding that no further discipline should be imposed.

Hearing Committee Recommendation

After reviewing the record of this matter, the hearing committee found respondent committed a criminal act involving dishonesty and a selfish motive, in which he sought to defraud his insurance company, his bank, and the Virginia State Department of Revenue. It found these acts were devised solely for respondent’s personal gain, and respondent could not, therefore, be considered a minor player in the fraud. It also found respondent made no attempt to admit his criminal behavior until he was arrested and facing a criminal trial. It recognized that respondent made restitution for his fraudulent acts, but did so only as part of a plea bargain.
As a mitigating factor, the committee found respondent has no prior disciplinary record. Among the aggravating factors found by the committee was respondent’s dishonest and selfish motive.
| fiBased on these factual findings, the committee found that respondent’s conviction represented a violation of the Rules of Professional Conduct as charged in the formal charges. It concluded disbarment was justified in this case.
*1139 Neither respondent nor the ODC objected to the hearing committee’s recommendation. However, in a letter to the disciplinary board, respondent conceded that he “can no longer argue in good faith that my conduct does not merit disbarment.”

Disciplinary Board Recommendation

After reviewing the record of this matter, the disciplinary board found the hearing committee’s factual findings with regard to the charged misconduct were generally supported by the record, with the exception of the finding relating to respondent’s failure to admit his criminal behavior until after “he was arrested and facing a criminal trial.” The board noted that while it is true that respondent did not confess his crime until the federal charges were imminent, the record reveals that respondent was allowed to enter his guilty plea simultaneously with the filing of the criminal information by the United States Attorney. In all other respects, the board adopted the hearing committee’s factual findings, as well as its conclusion that respondent violated the Rules of Professional Conduct as charged in the formal charges.
The board found respondent knowingly violated duties owed to the public and the profession, and that his conduct caused actual injury to the profession. The board found that two mitigating factors are present, namely absence of a prior disciplinary record and imposition of other penalties or sanctions. In aggravation, the board recognized respondent’s dishonest or selfish motive, failure to admit his crime until he was caught, and substantial experience in the practice of law.
|7In light of these considerations, the ABA’s Standards for Imposing Lawyer Sanctions, and the prior jurisprudence, the board recommended that respondent be disbarred. The board also recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
Neither respondent nor the ODC objected to the disciplinary board’s recommendation.
' DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). When the disciplinary proceedings involve an attorney who has been convicted of a crime, the conviction is conclusive evidence of guilt and the sole issue presented is whether respondent’s crimes warrant discipline and, if so, the extent thereof. Supreme Court Rule XIX, § 19(E); In re: Boudreau, 02-0007 (La.4/12/02), 815 So.2d 76; Louisiana State Bar Ass’n v. Wilkinson, 562 So.2d 902 (La.1990). The discipline to be imposed depends on the seriousness of the offense and the extent of the aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Perez, 550 So.2d 188 (La.1989).
The record demonstrates that respondent was convicted of one count of conspiracy to commit bank fraud and mail fraud, a felony, in violation of 18 U.S.C. § 371. The underlying facts of this conviction reveal a pattern of dishonest, fraudulent, and deceitful conduct by respondent spanning a period of more than two years. This court has disbarred attorneys convicted of similar crimes. See In re: Schneider, 97-2457 (La.1/30/98), 707 So.2d 38 (mail fraud, conspiracy to commit mail fraud, intentionally submitting false statements to a banking institution, and tax fraud); In re: Naccari, 97-1546 (La.12/19/97), 705 So.2d 734 (wire fraud); In re: King, 94-0686 (La.11/30/94), 646 So.2d 326 (aiding and abetting mail fraud). While we recognize respondent’s conviction did not arise out of the practice of law, we have held *1140 that disbarment may be warranted for a conviction not directly connected with the practice of law. In re: Brown, 95-0817 (La.5/21/96), 674 So.2d 243; Louisiana State Bar Ass’n v. Frank, 472 So.2d 1 (La.1986).
As mitigating factors, we recognize the absence of a prior disciplinary record and the imposition of other penalties or sanctions upon respondent. In aggravation, we find respondent exhibited a dishonest or selfish motive and failed to admit his crime. Respondent also possesses substantial experience in the practice of law, having been admitted to practice in Louisiana in 1981.
Under these circumstances, we find no basis to deviate from the baseline sanction of disbarment. Accordingly, we will accept the disciplinary board’s recommendation that respondent be disbarred.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Richard R. Nevitte, Jr. be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. In re: Nevitte, 98-3005 (La. 1/27/99), 730 So.2d 868.

. In addition to the fraudulent purchase amount, the bill of sale prepared by Mr. Jewell indicated the vehicle had an odometer mileage reading of 29,875 miles, when in fact, the odometer mileage reading was 59,875 miles. Respondent has made restitution to the credit union of the entire amount of the loan, plus interest.