976 So.2d 1245 (2004)
In re Joseph W. THOMAS.
No. 2003-B-2738.
Supreme Court of Louisiana.
February 25, 2004.
*1246 Charles B. Plattsmier, Chief Disciplinary Counsel, Robin Marie DeSalle-Pittman, Deputy Disciplinary Counsel, for applicant.
Charles E. Cotton, Joseph W. Thomas, New Orleans, for respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This attorney disciplinary proceeding involves six counts of misconduct stemming from two sets of formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Joseph W. Thomas, an attorney licensed to practice law in Louisiana.

UNDERLYING FACTS

01-DB-014

Vezina Matter
Respondent represented the plaintiffs in a medical malpractice claim and attorney Scott Vezina represented the defendant. In January 2000, respondent and Mr. Vezina appeared in court for a hearing in connection with a motion for sanctions filed by respondent. Following a hearing, the presiding judge, Judge Roland Belsome of Civil District Court for the Parish of Orleans, denied respondent's motion.
As they left the courtroom, respondent and Mr. Vezina became engaged in a heated discussion in the anteroom of the judge's chambers. The confrontation was witnessed by Dawn Garrison, Judge Belsome's minute clerk, and Bruce Waltzer, another attorney. These witnesses later testified that respondent made physical contact with Mr. Vezina by pressing Mr. Vezina against the wall with his chest and hitting Mr. Vezina's hands as Mr. Vezina raised them in self defense. During the incident, respondent directed abusive language toward Mr. Vezina and continued to threaten him, both physically and verbally. The altercation finally ceased when Mr. Waltzer stepped in between both men. At that point, Ms. Garrison proceeded to Judge Belsome's courtroom and reported what she had witnessed. Judge Belsome, who had already heard a "very loud outburst" in his anteroom, directed that respondent and Mr. Vezina be brought into his courtroom.
Judge Belsome then halted the regular proceedings on his docket in order to conduct a sua sponte rule for contempt hearing against respondent. At the hearing, Judge Belsome received testimony from respondent, Mr. Vezina, Ms. Garrison and Mr. Waltzer. Although respondent denied touching or threatening Mr. Vezina, the *1247 other witnesses testified to the contrary. At the conclusion of the hearing, Judge Belsome found respondent in contempt of court and sentenced him to one day in jail or a $500 fine. Respondent paid the fine.

Thomas Matter
In August 1997, James Thomas, Jr. and his siblings retained respondent to institute an asbestos claim and a medical malpractice claim arising from the death of their father. In March 2000, the Thomas clients filed a complaint with the ODC, alleging that in the two and one-half years since they retained respondent, respondent had not taken any measures to represent their interests. They indicated they requested their case files from respondent, but respondent refused to return them.
The ODC forwarded the complaint to respondent. Several weeks later, in June 2000, respondent filed an untimely response to the complaint. Respondent represented that he would be happy to return the files, but that it would take approximately two weeks to copy them. However, by October 2000, respondent had still not produced the files. Mr. Thomas again tried to contact him in writing and by telephone, but was unsuccessful.
Nearly one year later, in September 2001, respondent agreed to produce the files. He advised his clients they could retrieve their copies of the files from a copy service center. However, when they inquired with the copy service center about retrieving the files, they were told they would be billed for copying services in the amount of $1,975.46, which they were unable to pay. Ultimately, the clients did not receive their files until November 2001, almost two months after the formal disciplinary hearing in this matter.

Kerr Matter
As stated in Count II, the Thomas family retained respondent to institute a suit on their behalf arising from the death of their father. In June 1998, respondent filed suit on their behalf against Cooper/T. Smith Stevedoring. The petition sought recovery, in part, pursuant to the Longshore and Harbor Workers' Compensation Act ("Act"), based on allegations the Thomas family was financially dependent on their father at the time of his death. After one continuance, the matter was scheduled for trial on February 24, 1999.
One week before trial, respondent moved for a continuance. In his motion, respondent asserted his associate, who had been handling the case for him, left his firm in early January 1999 and respondent was unfamiliar with the case. Additionally, respondent alleged he had a previously scheduled medical malpractice matter set for trial in Orleans Parish Civil District Court at the same time as the trial in the longshoreman's case.
Judge James W. Kerr, Jr., the presiding administrative law judge, denied the motion. By telephone conference on February 19, 1999, he advised the counsel that he would not postpone the trial because he had already continued the case once for respondent and set aside the entire day on his docket for the trial. Judge Kerr rejected respondent's claim of a scheduling conflict, pointing out the court's pre-trial order issued in early December advised the parties that they had ten days from the issuance of the order to notify the court of any conflicts. Respondent replied that he had never seen the pre-trial order, but "assumed it was someplace in his office."
Trial was scheduled to commence at 8:15 a.m. Respondent did not appear at Judge Kerr's court at the scheduled time of 8:15 a.m., but instead respondent elected to go to Civil District Court to select a new date for his malpractice trial, even though he was aware that case had already been continued.[1] At the time, respondent knew *1248 he would be late for trial in Judge Kerr's court.
Respondent eventually appeared in Judge Kerr's court at approximately at 9:35 a.m., one hour and fifteen minutes late. When he finally appeared for trial, he made no comment about his tardiness, nor did he apologize to the court, his clients, or opposing counsel. When questioned by the court about his tardiness, respondent answered in a belligerent manner.[2]
Judge Kerr then attempted to proceed with the merits of the trial, but found respondent was completely unprepared to litigate the proceedings. He determined respondent had never met with his clients prior to trial and failed to produce a witness list. Moreover, the exhibits he did produce (which had been brought by his clients) were not marked and paginated as required by the court's pretrial order. As a result, the court proceedings were held up for approximately an additional thirty-minute period so respondent could get his few exhibits together and mark them.
Subsequently, when counsel for the defendants sought to rely on medical documents submitted during earlier discovery proceedings by respondent's associate, respondent objected to his own submissions on the basis of hearsay. During the trial, respondent demonstrated a complete lack of unfamiliarity with the procedural rules of the administrative proceeding. For example, he objected to Judge Kerr's questioning of witnesses, even though such questioning is permitted under the Act. When Judge Kerr questioned respondent's client, Alonzo Thomas, respondent accused the court of asking questions "hostile" to the position of his client, being "biased," and trying ". . . to torpedo the testimony" of Mr. Thomas. Through the proceedings, respondent acted in a rude and arrogant manner toward Judge Kerr and at one point referred to the proceedings as a "joke."
Subsequently, after conferring with the Department of Labor Chief Judge in Washington, D.C., Judge Kerr referred the matter to the United States District Court for the Eastern District of Louisiana *1249 to consider disciplinary charges against respondent. The district court ultimately did not pursue disciplinary charges against respondent, with the condition respondent attend additional continuing legal education on the topic of professionalism.
In January 2000, Judge Kerr issued an Order of Suspension suspending respondent from practice in his court, though permitting respondent to petition for reinstatement upon submitting proof that he had complied with the district court's order.

Commingling/Child Support Matter
In December 1999, the District Attorney's Office for the Parish of Orleans filed a complaint with the ODC. In the complaint, Assistant District Attorney Elizabeth Chatelain explained that in connection with a child support collection proceeding against respondent, she learned that respondent had apparently used checks from his client trust account to pay his personal child support obligation.
Respondent replied that he did not believe any clients' funds were in the trust account when the checks were written. Moreover, he denied he owed any child support, and instead alleged the district attorney's office had engaged in ethical misconduct in filing a complaint against him.
Subsequently, the ODC undertook its own investigation of respondent's financial records. After an audit of respondent's trust account, it determined respondent had commingled personal and client funds, failed to place client funds in trust, and paid personal expenses out of his trust account.
Meanwhile, the district attorney's office continued to pursue the child support collection proceeding against respondent. On September 20, 2000, Judge Rosemary Ledet of the Civil District Court for the Parish of Orleans found respondent in contempt of court for failing to pay $133,935 in past due child support previously ordered. The court also found that respondent's failure to pay child support was without good cause.
After being notified of the judgment of noncompliance, we declared respondent immediately ineligible to practice law in the State of Louisiana, pursuant to Supreme Court Rule XIX § 19.1 due to his failure to pay court-ordered child support. We further directed the ODC to institute appropriate disciplinary proceedings against respondent based on his failure to pay child support. In re: Thomas, 01-1142 (La.5/2/01), 798 So.2d 920.
Ultimately, respondent entered into a consent agreement with the State of Louisiana, in which respondent agreed to make an immediate payment of $100,000 in satisfaction of his past due child support obligation, and to pay a remaining $48,000 by August 31, 2001. Following the $100,000 payment, we reinstated respondent's eligibility to practice law. In re: Thomas, 01-1142 (La.6/28/01), 798 So.2d 921. However, when he neglected to satisfy the balance of his support obligation, he was returned to ineligibility status. In re: Thomas, 01-1142 (La.10/11/01), 803 So.2d 962. Once respondent fully satisfied his child support obligations, we returned him to eligibility. In re: Thomas, 01-1142 (La.11/9/01), 803 So.2d 962.

01-DB-011

Baham Matter
In 1994 or 1995, Jewel Cannon Baham retained respondent to represent her in a class action suit against Wyeth-Ayerst Laboratories concerning a defective Norplant contraceptive product. In April 1995, respondent wrote to his client enclosing the answer to the suit filed by the defendants, and advised his client she was a "part of the tag along litigation in the *1250 case." In 1997, respondent answered interrogatories on behalf of his client in the litigation. Thereafter, respondent took no further action on behalf of his client.
Over the next three years, Ms. Baham made numerous attempts to communicate with respondent, but was unsuccessful. In May 1999, a settlement was authorized in the litigation. Respondent failed to convey information about the settlement to Ms. Baham.
In September 2000, Ms. Baham filed a complaint with the ODC alleging respondent failed to communicate with her and neglected her legal matter. Respondent filed a response conceding he did not know the status of his client's case, but would take efforts to ascertain such. Subsequently, in December 2000, the defendants filed a Motion to Dismiss for Want of Prosecution. Respondent filed a timely opposition to the motion in January 2001.

Cantin Matter
In 1995, Benjamin Cantin, III, individually and on behalf of his minor son, retained respondent to institute a medical malpractice action stemming from the death of Mr. Cantin's wife. In October 1996, respondent filed suit on behalf of his client. Thereafter, respondent took no further action on behalf of his client and the case was ultimately dismissed as abandoned.
In December 2000, Mr. Cantin, who was unaware of the dismissal of his suit, filed a complaint with the ODC alleging that respondent had failed to communicate with him for more than three years. In response to the complaint, respondent asserted that he did not have an expert and, therefore, did not pursue the matter. Subsequently, he admitted at the formal hearing that he let the case "die on the vine."

DISCIPLINARY PROCEEDINGS

01-DB-014

Formal Charges
In January 1999, the ODC filed formal charges against respondent under docket number 01-DB-014. These charges encompassed the Vezina matter, Thomas matter, Kerr matter and the commingling/child support matter. Collectively, these charges alleged violations of Rules 1.1 (incompetence), 1.3 (lack of diligence), 1.15 (safekeeping client property), 3.1 (failure to pursue meritorious claims), 3.3 (candor toward the tribunal), 3.4(c) (fairness to opposing party and counsel; knowing disobedience of the rules of a tribunal), 3.5(c) (engage in conduct intended to disrupt tribunal), 8.2(a) (comments regarding judicial official), 8.4(a) (violating the Rules of Professional Conduct), 8.4(b) (criminal acts adversely reflecting on the lawyer's honesty), 8.4(c) (conduct involving fraud, deceit, dishonesty or misrepresentation), 8.4(d) (conduct prejudicial to the administration of justice) and 8.4(e) (imply ability to influence judicial officer) of the Rules of Professional Conduct.[3] Subsequently, the ODC supplemented and amended the formal charges to allege additional violations of Rules 3.4(c) and 8.4(b) based on the declaration of ineligibility to practice law stemming from respondent's failure to satisfy his past child support obligations.
Respondent filed an answer to the original and amended charges generally denying any misconduct on his part.

*1251 01-DB-085

Formal Charges
In August 2001, the ODC filed formal charges under docket number 01-DB-085 against respondent. These charges, encompassing the Baham matter and Cantin matter, alleged violations of Rules 1.1(a) (incompetence), 1.2(a) (scope of representation), 1.3 (lack of diligence), 1.4 (failure to communicate), 3.2 (failure to expedite litigation), 8.4(a) (violating the Rules of Professional Conduct) and 8.4(c) (conduct involving fraud, deceit, dishonesty or misrepresentation) of the Rules of Professional Conduct.[4] Respondent filed an answer in proper person generally denying any misconduct on his part.

Recommendations of the Hearing Committees

01-DB-014
A formal hearing was conducted over a period of several days. Thereafter, the hearing committee issued its recommendation.
As to the Vezina matter, the committee made a factual finding that respondent made physical contact with Mr. Vezina, directed abusive language at Mr. Vezina, and physically and verbally threatened Mr. Vezina. In making this factual determination, the committee specifically determined that Mr. Vezina's testimony was more credible than respondent's testimony. Based on this finding, the committee concluded respondent disrupted a tribunal in violation of Rule 3.5(c), and engaged in conduct prejudicial to the administration of justice in violation of Rule 8.4(d).
As to the Thomas matters, the committee made a finding of fact that respondent failed to return the Thomas family's files for a lengthy period of time, despite their many requests and the institution of a disciplinary complaint. The committee concluded this conduct violated Rule 1.16.[5]
*1252 As to the proceedings in Judge Kerr's court, the committee made a finding of fact that respondent was totally unprepared for trial, failing to competently and diligently represent his clients in violation of Rules 1.1 and 1.3. It also found respondent demeaned Judge Kerr and engaged in conduct prejudicial to the administration of justice in violation of Rules 3.5(c) and 8.4(d). The committee observed that respondent's client, Alonzo Thomas, exhibited discomfort at respondent's conduct during the hearing. The committee concluded that it could detect no remorse from respondent regarding the entire incident.
Finally, the committee found respondent commingled and converted funds in his trust account through his mishandling of his financial affairs in violation of Rules 1.15 and 8.4(a), although it was unclear if any client was hurt by respondent's accounting practices. Regarding respondent's failure to pay court-ordered child support, the committee noted that respondent had been involved in a great deal of litigation regarding his obligations, but it did not conclude he disobeyed an order of a court.
Addressing the issue of sanctions, the committee found as aggravating factors respondent's prior discipline,[6] lack of remorse and failure to acknowledge the wrongful nature of his conduct. In mitigation, the committee recognized respondent's good character or reputation, extensive legal experience[7] and cooperative attitude toward the disciplinary proceedings. Accordingly, the committee recommended that respondent be suspended from the practice of law for a period of two years.

01-DB-085
Following a formal hearing, the hearing committee found sufficient evidence to support each of the counts of misconduct. Specifically, it determined respondent incompetently handled his clients' matters, failed to communicate with his clients, failed to expedite his clients' matters and engaged in conduct involving fraud, deceit, dishonesty, or misrepresentation, in violation of Rules 1.1(a), 1.4, 3.2 and 8.4(c), respectively.
Addressing the issue of sanctions, the hearing committee concluded respondent caused actual injury to his clients, noting Ms. Baham's claim was not prosecuted and Mr. Cantin's claim was dismissed for lack of prosecution. It considered as aggravating factors prior discipline, pattern of misconduct, multiple offenses, obstruction and non-cooperation, refusal to acknowledge the wrongful nature of his conduct, substantial experience in the practice of law and indifference toward restitution.
Based on its findings, the hearing committee recommended that respondent be suspended for a period of two years and one day, with one year deferred, followed by a one-year period of probation.

Recommendation of the Disciplinary Board
The disciplinary board consolidated 01-DB-014 and 01-DB-011 and issued a single recommendation encompassing both sets of charges. Following its review of the record, the disciplinary board concluded *1253 the committee's findings of fact were not manifestly erroneous, save some minor instances. However, the board determined there were additional professional violations, which were not cited by the hearing committees. Specifically, the board determined respondent engaged in criminal misconduct in violation of Rule 8.4(b), when he struck Mr. Vezina in Judge Belsome's chambers. The board found respondent's comments to Judge Kerr violated Rule 8.2(a) by impugning the integrity of Judge Kerr by suggesting that his decisions were based on [anything] other than the law and facts." The board also concluded respondent violated Rule 3.4(c), based on his failure to comply with his court-ordered child support that resulted in protracted litigation, and engaged in conduct prejudicial to the administration of justice in violation of Rule 8.4(d).
As to the issue of sanctions, the board determined respondent violated duties to his clients, to the public, to the legal system and as a professional. While it concluded respondent's conduct was knowing in most instances, it determined respondent's conduct in the Vezina and Kerr matters was "unquestionably intentional." It determined his lack of respect for the judge and lack of preparation in the Kerr matter caused damage to the legal system as well as his client. The board found respondent's actions in the Thomas, Cantin and Baham matters caused frustration to his clients. Finally, it observed he also caused damage to the profession by his failure to abide by his child support obligations, necessitating the involvement of the court system and the District Attorney's office.
As aggravating factors, the board recognized prior discipline, pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of his conduct and substantial experience in the practice of law. In mitigation, the board noted the imposition of other penalties in light of the contempt ruling in Judge Belsome's court, the contempt proceedings instituted by Judge Kerr, and the declaration of ineligibility issued by this court pursuant to Rule XIX, Sec. 19.1, which made respondent ineligible to engage in the practice of law.
Based on its findings, the board recommended that respondent be suspended from the practice of law for three years.
One board member dissented, urging disbarment to be appropriate under the facts.
Respondent filed an objection to the board's recommendation. Accordingly, the matter was docketed for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G).

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444, 445 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150. With these precepts in mind, we now turn to an analysis of the record to determine if respondent has violated the professional rules as charged.

*1254 Vezina Matter

The hearing committee made a factual finding that respondent "made physical contact with Mr. Vezina and pressed Mr. Vezina against the wall with his chest, placed his hands on Mr. Vezina's chest, directed abusive language at Mr. Vezina, and physically and verbally threatened Mr. Vezina." The committee's determination was based on its credibility determinations after hearing testimony from respondent, Mr. Vezina and eyewitnesses to the incident. Although this court is the trier of fact in bar disciplinary cases, we are not prepared to disregard the credibility evaluations made by those committee members who were present during respondent's testimony and who act as the eyes and ears of this court. Therefore, we cannot say the hearing committee was clearly wrong when it determined, based on its credibility determinations, that respondent engaged in a physical altercation. In re: Bolton, 02-0257 (La.6/21/02), 820 So.2d 548.
In oral argument before this court, respondent spent much of his time disputing the board's determination that his actions amounted to a battery. However, we find it is of no moment whether respondent's actions would rise to the level of a battery for purposes of criminal law. For purposes of this disciplinary proceeding, it suffices to say his actions were intended to disrupt a tribunal and were prejudicial to the administration of justice.[8] Accordingly, we find respondent's conduct violated Rules 3.5(c) and 8.4(d).

Thomas Matter
The record clearly supports the committee's factual finding that respondent failed to return the clients' files to them in a prompt manner. Respondent asserts that he was entitled to make a copy of the file and the delay was occasioned by the copying costs. However, Rule 1.16(d) has always mandated the lawyer "promptly release" a client's file upon the client's request.[9] Respondent's delay in releasing the file, despite numerous requests by his client, cannot be considered "prompt" under any stretch of the imagination. Accordingly, we find respondent's conduct violated Rule 1.16(d).

Kerr Matter
The hearing committee made factual findings that respondent's comments toward Judge Kerr were prejudicial to the administration of justice and his substantive actions in this suit amounted to incompetent representation. Based upon our review of the transcript of the proceedings before Judge Kerr and other evidence in the record, we conclude this factual finding is amply supported. Respondent's insulting and abusive language toward Judge Kerr and his utter lack of preparation for this case is frankly shocking to this court. Unquestionably, we find violations of Rules 1.1, 3.1, 3.4(c), 3.5, 8.2(a) and 8.4(a)(d) and (e).

Commingling/Child Support Matter
The committee found respondent commingled his own funds with those of *1255 his clients. This finding is supported by the record. Therefore, we find respondent violated Rule 1.15(a).
The record further establishes that respondent failed to pay court-ordered child support, causing him to be held in contempt of court. These facts establish a violation of Rule 3.4(c).

Baham Matter
The hearing committee found respondent failed to communicate with Ms. Baham and neglected her legal matter. Although respondent asserted Ms. Baham failed to provide him with a current address, the committee rejected his argument. The committee's conclusions are supported by the record. Accordingly, we find respondent violated Rules 1.4 and 3.2.

Cantin Matter
The committee found respondent failed to communicate with Mr. Cantin and failed to take any action in his legal matter, causing it to be abandoned. These findings are supported by the record. Accordingly, we find respondent violated Rules 1.4 and 3.2.

SANCTIONS
Having found evidence of professional misconduct, the next issue presented for our consideration is the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
Determining the baseline sanction for respondent's misconduct is somewhat difficult, given the large amount of misconduct encompassed by these formal charges. In In re: Estiverne, 99-0949 (La.9/24/99), 741 So.2d 649, we suspended an attorney for one year and one day for threatening another attorney and brandishing a weapon. In In re: Bilbe, 02-1740 (La.2/7/03), 841 So.2d 729, we suspended an attorney for three years for conduct which in part involved disruptive and disrespectful conduct before an administrative tribunal. In a case involving neglect, failure to communicate and failure to return files, we have imposed an eighteen-month suspension. In re Trichel, 00-1304 (La.8/31/00), 767 So.2d 694. Taking a composite view of these cases, we find the baseline sanction for respondent's misconduct in the instant case is a lengthy suspension from the practice of law.
Numerous aggravating factors are present, including prior discipline, pattern of misconduct, multiple offenses, obstruction and non-cooperation, refusal to acknowledge the wrongful nature of his conduct, substantial experience in the practice of law and indifference toward restitution. However, in mitigation, we recognize that some of respondent's misconduct was the subject of other penalties.
Considering all these factors, we find a three-year suspension from the practice of law is an appropriate sanction for respondent's misconduct.

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Joseph W. Thomas, Louisiana Bar Roll number 8163, be suspended from the practice of law for a period of three years. All costs and expenses in the matter are assessed against *1256 respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, Justice, dissenting.
It is well-settled that we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board. However, following a lengthy hearing, the hearing committee recommended a suspension for a period of two years and one day, with one-year deferred, subject to a one-year supervised probation.
In my opinion, the two-year suspension recommended by the hearing committee is appropriate discipline in this case. For this reason, I respectfully dissent.
NOTES
[1] In a pleading filed in connection with subsequent contempt proceedings, respondent stated, "a day or so before February 24, 1999, counsel for claimants was advised that the medical malpractice trial would be continued because of an ongoing trial."
[2] The following exchange occurred between respondent and Judge Kerr:

Judge Kerr: All right. Mr. Thomas, this case was specifically set today, as a result of a conference call with your former assistant, and you were reminded that it was set for 8:15 during our conference call last week. Why weren't you here and ready to go 
Respondent: My 
Judge Kerr:  to trial at 8:15? And stand up when you're addressing the Court.
Respondent: Your honor, do I detect some hostility to me?
Judge Kerr: Yes, sir. You had 
Respondent: And let me just say for the record 
Judge Kerr:  everybody waiting here. Just a minute.
Respondent: Before you said 
Judge Kerr: You're not going to interrupt me. I'll give you ample time 
Respondent: You interrupted me.
Judge Kerr:  to speak. Yes. Sir.
Respondent: You interrupted me.
Judge Kerr: I'll  I may interrupt you quite frequently.
Respondent: I don't  let me tell you. I object to that.
Judge Kerr: Okay.
Respondent: I object to you interrupting me.
Judge Kerr: Okay. We've waited an hour and 45 minutes. Why did we have to do that?
Respondent: Because I wasn't here is why you had to do it. Now, if you want to know why I wasn't here 
Judge Kerr: Yes sir.
[emphasis added]
[3] The ODC filed five counts of misconduct against respondent in these proceedings. As to the first count of misconduct, the hearing committee and disciplinary board found insufficient evidence to support the allegations and dismissed the charge. While the ODC's filings in this court encompassed an objection to the dismissal of the first count, the ODC withdrew its objection to the dismissal at oral argument.
[4] The ODC filed three counts of misconduct against respondent in these proceedings. As to the third count of misconduct, the hearing committee and disciplinary board found insufficient evidence to support the allegations and dismissed the charge. While the ODC's filings in this court encompassed an objection to the dismissal of the count, the ODC withdrew its objection to the dismissal at oral argument.
[5] As to respondent's failure to return the Thomas' files, respondent was not charged with Rule 1.16, relative to a failure to properly terminate a representation. Rather, he was charged with Rule 1.15, which pertains to a failure to safekeep client property. While the committee cited no reasons for substituting Rule 1.15 with Rule 1.16, the board determined the ODC simply made a typographical error and intended to charge respondent with Rule 1.16, which specifically pertains to the return of clients' files at the end of a representation. In affirming the committee's findings of the Rule 1.16 violation, the board noted that "[r]espondent was fully apprized of the nature of the charges against him, offered a full defense against the allegation and has been afforded due process[,]" citing in In re: Nevitte, 02-1962 (La.9/30/02), 827 So.2d 1135.

Along the same line, in defense of the charges, respondent claimed that he made the copied files available to his clients at a cost of $1,975.46. In light of such, the committee requested the parties brief the issue of whether a lawyer could require payment of copying costs before delivering a client file. The briefs indicated that, between the filing of the formal charges and the date of the hearing, Rule 1.16(d) had been amended in May 2001 to add the statement "[t]he lawyer may retain a copy of the file but shall not condition release over issues relating to the expense of copying the file or for any other reason." Respondent argued the rule was inapplicable since the formal charges and his misconduct took place before the amendment. However, the committee pointed out respondent did not turn the file over until three months after the formal hearing and, as such, he engaged in misconduct after the effective period of the amendment. Thus, the committee concluded respondent still violated Rule 1.16(d).
[6] Respondent has a prior disciplinary record consisting of three private reprimands and two admonitions. As to the reprimands: 4/9/85 COPR# 7711 (communicating with an adverse party represented by counsel); 1/28/87 COPR# 8521-A (submitting a false affidavit in litigation); and 1/17/88 COPR# 8988-A (collecting a $1,500 unearned fee). As to the admonitions: 5/20/99 99-ADB-034 (failure to pay $619 due to a third-party attorney); 2/15/00 00-ADB-007 (failure to pay $270 owed to the Louisiana Attorney Disciplinary Board).
[7] Respondent was admitted to the practice of law in 1973.
[8] There is a common misconception in the disciplinary system, which is sometimes reflected in the ODC's formal charges, that a greater number of rule violations will result in a harsher sanction. However, the jurisprudence of this court establishes that no such formula exists. In assessing discipline, this court looks to the nature of the conduct rather than the numerical amount of rule violations.
[9] On May 24, 2001, we amended Rule 1.16(d) to add language making it clear that the lawyer "shall not condition release over issues relating to the expense of copying the file or for any other reason." This language did not create a substantive change, but simply clarified the existing requirements of the rule.