*558 ATTORNEY DISCIPLINARY PROCEEDINGS
| .PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Logan L. Nichols, an attorney licensed to practice law in Louisiana but currently on interim suspension.[1]
UNDERLYING FACTS AND PROCEDURAL HISTORY
On February 3, 2003, the United States Attorney filed a single count bill of information in the United States District Court for the Western District of Louisiana charging respondent and others with trading on material, non-public information regarding the common stock of American Waste Services, Inc. On February 13, 2003, respondent pleaded guilty to one felony count of conspiracy to commit securities fraud,[2] a violation of 18 U.S.C. § 371. The underlying facts of the criminal | ¡.conviction are not in dispute, having been stipulated to by respondent and the Government as part of a plea agreement.
Respondent has been a long-time friend and business associate of William Roth-rock, the Senior Vice President of Business Development at USA Waste Services, Inc. On February 6,1998, American Waste agreed to be acquired by USA Waste. On February 5, 1998, the day before the public announcement of the merger, Mr. Rothrock telephoned respondent and communicated to him material, non-public information about the acquisition. Within approximately twenty minutes of the call, respondent purchased 100,000 shares of American Waste stock based upon the tip he had received. Four days later, on February 9, 1998, respondent sold his shares and realized a profit of $179,850.
On March 9, 1998, respondent had a second telephone conversation with Mr. Rothrock. During this conversation Mr. Rothrock communicated to respondent material, non-public information about USA Waste’s plan to merge with Waste Management, Inc. Based on this tip, respondent purchased 10,000 shares of Waste Management common stock. Two days later, on March 11, 1998, respondent sold his shares and realized a profit of $50,625.[3]
Respondent has stipulated that he and Mr. Rothrock conspired to commit securities fraud. He also admitted that he knew the information he had received from Mr. Rothrock “was communicated to me in *559 breach of a duty William A. Rothrock owed to USA Waste.” [4]
| ¡¡Respondent's illegal conduct was also the subject of an investigation by the U.S. Securities and Exchange Commission (SEC). Following its investigation, the SEC filed a complaint against respondent and others in the United States District Court for the Southern District of Texas. By consent judgment dated November 8, 2001 in the matter entitled Securities and Exchange Commission v. William A. Rothrock, IV, et al., number H-01-3732 on the docket of the United States District Court for the Southern District of Texas, respondent was ordered to disgorge a total of $851,637.01 in profits from his illegal conduct and pre-judgment interest. Respondent paid this sum on November 21, 2001. Respondent was further ordered to pay a civil penalty of $461,803.50, which has also been satisfied.
DISCIPLINARY PROCEEDINGS
On May 9, 2003, the ODC filed one count of formal charges against respondent, alleging that his conviction of a criminal offense constitutes a violation of Rules 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer) and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct. Respondent answered the formal charges and admitted his conviction, but requested a hearing for the purpose of determining an appropriate sanction.

Review of the Record

When this matter proceeded to a formal hearing on September 24, 2003, the ODC introduced portions of the record of respondent’s federal criminal proceeding in support of the formal charges. Respondent was the only witness to testify in Person before the hearing committee, but included in the documentary evidence Rsubmitted by respondent are several letters attesting to his good character and reputation in the community.
In his testimony, respondent expressed remorse for his involvement in insider trading, and in particular for the effect the resulting proceedings have had on his family. He also testified that his criminal conduct was not related to the practice of law. On cross-examination, respondent admitted that when he gave a sworn statement to the Securities and Exchange Commission in November 1998, he testified that he “picked up on the stock deal” on his own, without having received a tip from Mr. Rothrock; it was not until the SEC told him about the evidence in its possession that he admitted what he had done:
Q. So at some time between November of ’98 when the statement was taken in ’98 and 2001, you decided to become candid with the SEC when you hadn’t been before, is that correct?
A. I think that’s correct, yes.
Q. And you decided to become candid with the SEC basically because you knew what it was that they could prove, is that correct?
A. I think that’s a fair statement, yes.
Q. You didn’t on your own go to the SEC and say, “I’m sorry. I engaged in this sort of conduct,” and when they first contacted you, you didn’t for want of a better set of *560 words admit to what you’d done, did you?
A. No.
Q. You told them a story at first, correct? You told them a different story, one that was not accurate, is that true?
A. That’s correct.
[T. pp. 38-39]
| .^Respondent further admitted that on both of the occasions on which he received inside information from Mr. Rothrock he passed that information along to other individuals, each of whom traded on the tip. When asked why he knowingly traded on inside information, respondent admitted that he did so to make money but could otherwise offer no explanation; he simply replied, “I don’t know, ... I did it.”

Hearing Committee Recommendation

The hearing committee noted respondent’s admission that his conduct violated Rules 8.4(b) and 8.4(c) of the Rules of Professional Conduct. Such conduct violated duties owed by respondent to the public and under the ABA’s Standards for Imposing Lawyer Sanctions, the applicable baseline sanction is disbarment. The only aggravating factor recognized by the committee is respondent’s substantial experience in the practice of law (admitted 1976). In mitigation, the committee found the following factors apply: absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, imposition of other penalties or sanctions, and remorse. Concluding that these mitigating factors are entitled to significant weight, the committee recommended that respondent be suspended from the practice of law for three years.
Both respondent and the ODC objected to the manner in which the aggravating and mitigating factors were applied by the hearing committee. The ODC also objected to the leniency of the sanction recommended by the committee.

Disciplinary Board Recommendation

| fiAfter reviewing the record, the disciplinary board accepted the hearing committee’s factual findings and application of the Rules of Professional Conduct. The board found respondent intentionally violated duties owed to the public and to the profession, causing serious injury to the public’s perception of the legal profession and those who practice it. The board concluded that disbarment is the baseline sanction for respondent’s misconduct.
In aggravation, the board recognized respondent’s dishonest or selfish motive, substantial experience in the practice of law, and illegal conduct. The mitigating factors found by the board include the absence of a prior disciplinary record, timely good faith effort to make restitution or to rectify the consequences of the misconduct, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, imposition of other penalties or sanctions, and remorse.
The board then turned to an examination of recent disciplinary cases involving attorneys who have been convicted of federal felonies. In In re: Palmer, 02-1780 (La.12/4/02), 835 So.2d 410; In re: Nevitte, 02-1962 (La.9/30/02), 827 So.2d 1135; and In re: Adams, 00-1326 (La.6/16/00), 762 So.2d 617, the respondents were charged with violations of 18 U.S.C. § 371 and of Rule 8.4(b) and/or Rule 8.4(c). All were convicted of, or pleaded guilty to, offenses of which fraud is a necessary element, and all were disbarred. Likewise, the board concluded that disbarment is appropriate in this case, given the self-serving nature *561 of respondent’s actions and the adverse reflection those actions have upon his honesty, trustworthiness, or fitness as a lawyer.
^Accordingly, the board recommended that respondent be disbarred. The board also recommended that respondent be assessed with all costs and expenses of these proceedings.
Respondent filed an objection in this court to the sanction recommended by the disciplinary board. Pursuant to Supreme Court Rule XIX, § 11(G)(1)(b), a timely filed objection to the board’s findings and recommendations ordinarily results in the assignment of the matter for oral argument. However, in this case, both parties agreed to waive oral argument and consented to the court’s consideration of the matter on the record presented.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). When the disciplinary proceedings involve an attorney who has been convicted of a crime, the conviction is conclusive evidence of guilt and the sole issue presented is whether respondent’s crimes warrant discipline, and if so, the extent thereof. Supreme Court Rule XIX, § 19(E); In re: Boudreau, 02-0007 (La.4/12/02), 815 So.2d 76; Louisiana State Bar Ass’n v. Wilkinson, 562 So.2d 902 (La.1990). The discipline to be imposed depends on the seriousness of the offense and the extent of the aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Perez, 550 So.2d 188 (La.1989).
In the instant case, respondent stands convicted of one count of conspiracy to commit securities fraud. This crime is a felony under federal law and clearly warrants serious discipline. Indeed, respondent acknowledges that the applicable baseline sanction is disbarment. The only issue for us to resolve is whether a downward 1 ^departure to a three-year suspension is warranted, based on the mitigating factors present.
We recognize that several mitigating factors are supported by the record, including the absence of a prior disciplinary record, character or reputation, imposition of other penalties or sanctions, and remorse. Respondent has also demonstrated a cooperative attitude toward the disciplinary proceedings. Nevertheless, these mitigating factors do not diminish either the egregious nature of the conduct at issue or the substantial actual harm that results to the integrity of the profession whenever a lawyer is convicted of a serious crime.
Respondent is guilty of trading on inside information obtained on two separate occasions from an executive of USA Waste Services, Inc. The tips concerned USA Waste’s acquisition of one company and its subsequent merger with a second company. Respondent made a total of $230,475 in profits on these tips. He also passed the tips on to several friends, who then traded on the inside information and made a profit. Respondent knew this conduct was wrong, but when questioned under oath about his activities in November 1998 by the Securities and Exchange Commission, he denied any wrongdoing. Respondent did not ultimately admit his illegal conduct until 2001, some three years later, when he was presented with the evidence disproving his earlier testimony.
The cases cited by the disciplinary board clearly reflect that in disciplinary proceedings involving an attorney’s conviction of a crime involving elements of fraud and misrepresentation, this court has not hesitated to impose disbarment. As in those cases, *562 disbarment is the only appropriate sanction under these facts.
Considering all the circumstances, we find no basis upon which to deviate downward from the baseline in this case. Accordingly, we will accept the ^disciplinary board’s recommendation and impose disbarment, retroactive to April 16, 2003, the date of respondent’s interim suspension.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Logan Lee Nichols, Louisiana Bar Roll number 9993, be and he hereby is disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked, retroactive to his April 16, 2003 interim suspension. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. In re: Nichols, 03-0918 (La.4/16/03), 845 So.2d 1044.

. The following are the elements of the offense of securities fraud:
1. That respondent knowingly engaged in acts, practices, or courses of dealing which operated as fraud and deceit on any person;
2. That respondent did so in connection with the purchase or sale of the securities described in Count one of the Bill of Information, namely, the common stock of American Waste;
3. In connection with this purchase or sale, respondent made use of or caused the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange; and
4. Respondent acted with the intent to defraud.

.After receiving both the February and March tips from Mr. Rothrock, respondent in turn tipped several of his friends, each of whom profited by trading on the inside information.

. In October 2003, respondent was sentenced by the district court to a period of probation and community service; however, on July 2, 2004, the United States Court of Appeals for the Fifth Circuit vacated the sentence and remanded the case for re-sentencing. United States v. Nichols, 376 F.3d 440 (5th Cir.2004).