820 So.2d 548 (2002)
In re Barry W. BOLTON.
No. 2002-B-0257.
Supreme Court of Louisiana.
June 21, 2002.
*549 Charles B. Plattsmier, Baton Rouge, Counsel for Applicant.
Barry W. Bolton, Bogalusa, Lewis O. Unglesby, Baton Rouge, Counsel for Respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary proceeding arises from one count of formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Barry W. Bolton, an attorney licensed to practice law in Louisiana.

UNDERLYING FACTS
Respondent was born in 1964 and was admitted to the bar in 1996. He was a former assistant district attorney for the Parish of Washington and was elected as city councilman for the City of Bogalusa.
On October 7, 1999, respondent approached Judge Peter J. Garcia of the 22nd Judicial District Court of St. Tammany and Washington Parishes, in the judge's parking lot of the Washington Parish Courthouse in Franklinton, Louisiana. Respondent asked Judge Garcia's law clerk, who was with Judge Garcia, to leave them alone for a few minutes. At Judge Garcia's direction, the law clerk left and went into the courthouse.
Once they were alone, respondent asked Judge Garcia about the procedure for giving a "gift" to a judge. Judge Garcia advised him judges were barred from accepting gifts. Respondent then stated he wanted to give a monetary contribution to a judge.[1] Judge Garcia informed respondent of the monetary limitations and procedural requirements for giving a campaign contribution. Respondent then made reference to a personal injury case pending in Judge Garcia's division in which *550 respondent was counsel for plaintiff. Although respondent did not specify the name of the case, he asked Judge Garcia how soon the case could be set on the docket, stating that his client was "badly hurt." According to Judge Garcia, respondent also indicated that the defendant in the case had "deep pockets."[2] Immediately after referring to the case, respondent shifted position closer to Judge Garcia and then asked Judge Garcia, "What if I wanted to give you $5,000?" Respondent then traced a box in the air with his hands and told Judge Garcia, "This [conversation] is just between me and you."
At that point, Judge Garcia abruptly terminated the conversation, left the parking lot and entered the courthouse. After conferring with another judge on his court and with this court's Judicial Administrator's Office, Judge Garcia ultimately reported the incident to the ODC.
The following day, respondent spoke to Allen Myles, his co-counsel in the personal injury litigation, about the conversation. Mr. Myles suggested respondent write a letter of apology to the judge. Respondent asked Mr. Myles to prepare a letter for him, paying Mr. Myles $1,500. Also, while appearing before Judge Garcia in open court, respondent apologized for any misunderstanding which may have resulted from the conversation.

DISCIPLINARY PROCEEDINGS

Formal Charges
Upon investigating the matter, the ODC instituted one count of formal charges alleging respondent violated Rules 8.4(a) (violating or attempting to violate the Rules of Professional Conduct and knowingly assist or induce another to do so, or through the acts of another), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice), 8.4(e) (stating or implying an ability to improperly influence a judge, judicial officer, governmental agency, or official) and 8.4(f) (knowingly assist a judge or judicial officer in conduct that is a violation of the applicable Rules of Judicial conduct or other laws) of the Rules of Professional Conduct.
Respondent filed an answer denying that he engaged in any professional misconduct. In support, he maintained there was a "substantial misinterpretation of his intentions, caused by his failure to properly articulate his wishes to Judge Garcia and his feelings to the Court."

Formal Hearing
Respondent testified on his own behalf at the formal hearing. Respondent denied having any intention to improperly influence the outcome of the personal injury litigation pending in Judge Garcia's division. Instead, he testified he was unfamiliar with the campaign finance laws relating to judges and was simply seeking advice from Judge Garcia. Respondent also testified he felt like an outsider in the Washington Parish legal community and his motive in approaching Judge Garcia was to develop a friendship. Respondent testified:
My motive for approaching Judge Garcia was to try to identify with somebody in that particularin my area as aas someone in the field of law. And so when I approached him I was basically trying to develop or trying to impress himI needed a friend.
While respondent conceded he told Judge Garcia to keep the matter private, he further refuted any implication that this *551 request demonstrated an improper motive. Rather, respondent testified:
I didn't want anybody to know that I was trying to create a friend in Judge Garcia, because I didn't know whether or not they would try to taint that. And Ito really give you an idea or understanding where I was mentally, I have to go back to the things that transpired in my life up until that point, my early part of my attorney life. How other judges had made allegations against me that were not true.
Judge Garcia also testified at the hearing. He testified that, at the beginning of his meeting with respondent, he assumed he was just answering general questions on campaign finance laws. However, he believed the tenure of the conversation changed when respondent began talking about the personal injury case pending in Judge Garcia's division and asked about giving a $5,000 contribution to Judge Garcia. Judge Garcia interpreted the latter statement as "either in reference to an inappropriate campaign contribution or it related to the case in which he was talking about."
Nonetheless, Judge Garcia admitted he did not know what was in respondent's mind when he made these comments. He testified that respondent "could have had different intentions than I interpreted."

Hearing Committee Recommendation
After considering the testimony presented at the formal hearing, the committee determined the ODC failed to prove by clear and convincing evidence that respondent intended to bribe Judge Garcia or otherwise improperly influence the outcome of the personal injury matter pending in Judge Garcia's division. As a result, it concluded the ODC failed to prove violations of Rules 8.4(a), 8.4(c), 8.4(e) and 8.4(f).
However, the committee determined the evidence supported a conclusion that respondent's conversation with Judge Garcia was improper. The committee noted the subject matter of the ex parte conversation included a discussion about giving a gift to the judge, combined with discussion of a pending case in the judge's division that he wanted to set for trial. Though it found respondent's actions were negligent, the committee reasoned the combination of these topics created an appearance of impropriety. The court also found respondent's actions caused potential interference with the legal proceeding pending in Judge Garcia's division, because, based on Judge Garcia's interpretation of the parking lot conversation as being improper, he may not have been able to set aside his emotions regarding the case, which could affect his future rulings in the matter. Accordingly, the committee found respondent's actions constituted conduct prejudicial to the administration of justice, in violation of Rule 8.4(d).
Relying on Standard 6.33 of the ABA's Standards for Imposing Lawyer Sanctions,[3] the court determined the baseline sanction was a reprimand. The committee found no aggravating factors were present. As mitigating factors, it recognized the absence of a prior disciplinary record, full and free disclosure to the disciplinary board or cooperative attitude toward the proceedings, inexperience in the practice of law (admitted three years at the time of the misconduct) and good character or reputation.[4]
*552 Based on these findings, the committee recommended respondent be reprimanded. It further suggested respondent be directed to attend two to four hours of continuing legal education in the area of ethics and, specifically, in reference to parties and officers of the court.

Disciplinary Board Recommendation
The disciplinary board accepted the committee's findings of fact in all significant regards.[5] The board also concurred in the committee's finding that respondent violated Rule 8.4(d), but noted that, by violating Rule 8.4(d), respondent also violated Rule 8.4(a), which prohibits violating or attempting to violate the Rules of Professional Conduct.
As to the issue of sanctions, the board characterized respondent's conduct as intentional rather than negligent, finding the record supported a conclusion respondent "intentionally engaged in improper ex parte communication with Judge Garcia." The board concluded there was potential injury to the legal system and a party to the litigation because respondent's conduct could have interfered with the outcome of his client's legal proceeding. The board concurred in the mitigating factors cited by the committee, and noted the absence of any aggravating factors.
Citing to Standards 6.31 and 6.32 of the ABA's Standards for Imposing Lawyer Sanctions[6] and Louisiana State Bar Ass'n v. Harrington, 585 So.2d 514 (La.1990), the board found the baseline sanction for respondent's misconduct was a nine-month suspension. Applying the mitigating factors, particularly respondent's relative inexperience in the practice of law, the board deviated downward from the baseline sanction to propose a six-month suspension. Two board members concurred and dissented in part.
Both the ODC and respondent filed an objection to the board's findings and recommendation. Based on the objections, the matter was set on the court's docket for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

DISCUSSION
Because much of this case turns on respondent's subjective intent, we place great emphasis on the findings of the members of the hearing committee on this issue. The three members of the hearing *553 committee, two of whom were attorneys and one of whom was a lay person drawn from the community, had the opportunity to see and hear the witnesses, including respondent, who testified in this matter. Unlike the disciplinary board and this court, the hearing committee was not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record. See, e.g., In re A.J.F., 00-0948 (La.6/30/00), 764 So.2d 47; Adkins v. Huckabay, 99-3605 (La.2/25/00), 755 So.2d 206.
The hearing committee concluded that respondent was credible when he testified he had no intent to offer a bribe to Judge Garcia or influence the outcome of the case in any way, and that his actions were negligent rather than intentional. While the evidence could support a contrary conclusion, we have observed in a civil context that where the fact finder is presented with two permissible views of the evidence, the fact finder's choice between them is not clearly wrong. Rosell v. ESCO, 549 So.2d at 840, 844 (La.1989). Although this court is the trier of fact in bar disciplinary cases, we are not prepared to disregard the credibility evaluations made by those committee members who were present during respondent's testimony and who act as the eyes and ears of this court. Therefore, we cannot say the hearing committee was clearly wrong when it determined, based on its credibility determinations, that respondent did not intend to offer a bribe or otherwise improperly influence the outcome of the case.
Although we find the evidence does not support a finding of any intentional conduct on the part of respondent, the record clearly supports the conclusion that he entered into ex parte communications with the judge and the negligent ramifications of his actions created an appearance of impropriety. His actions had the potential to cause actual harm to the administration of justice, even if he did not intend such a result. Under these circumstances, we find respondent has violated Rules 8.4(a) and 8.4(d).
Having found violations of the Rules of Professional Conduct, we now turn to a determination of an appropriate sanction for this misconduct. The purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the standards of the profession. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; In re: Lain, 00-0148 (La.5/26/00), 760 So.2d 1152; Louisiana State Bar Ass'n v. Levy, 400 So.2d 1355 (La.1981). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. In re: Redd, 95-1472 (La.9/15/95), 660 So.2d 839; Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
In determining a baseline sanction, we find ABA Standard 6.32 is instructive. This standard provides "[s]uspension is generally appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes interference or potential interference with the outcome of the legal proceeding." As we have stated earlier, the evidence supports a conclusion respondent knew the communication was improper. His actions had the potential to cause interference with the legal proceedings. Accordingly, we find the baseline sanction *554 for respondent's misconduct is a suspension.
Numerous mitigating factors are present, including the absence of a prior disciplinary record, full and free disclosure to the disciplinary board or cooperative attitude toward the proceedings, inexperience in the practice of law and good character or reputation. We are unable to discern any aggravating factors from the record.
Considering the facts of this case, we conclude a one-year suspension from the practice of law is the appropriate penalty for respondent's misconduct. However, in light of the mitigating factors, we will defer six months of that suspension, subject to the requirement that respondent enroll in and complete the Ethics School program sponsored by the Louisiana State Bar Association.

DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Barry W. Bolton be suspended from the practice of law in Louisiana for a period of one year. Six months of that suspension shall be deferred, subject to the requirement that respondent enroll in and complete the Ethics School program sponsored by the Louisiana State Bar Association. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of the finality of this court's judgment until paid.
VICTORY and KNOLL. JJ., dissent and assign reasons.
TRAYLOR, J., dissents for reasons assigned by VICTORY, J.
VICTORY, J., dissenting.
I must respectfully dissent from the majority's finding that while respondent "knowingly intended to enter into ex parte communications with Judge Garcia" about a case pending in Judge Garcia's court, there was nonetheless "a lack of clear and convincing evidence respondent intended to offer a campaign contribution to Judge Garcia with the intention of improperly influencing the outcome of the case." Per Curiam Opinion at p. 553.
The facts are basically undisputed. Respondent was waiting at the judges' parking lot at the Franklinton courthouse for Judge Garcia to arrive. When Judge Garcia arrived with his law clerk, respondent asked to speak to the judge alone, whereupon the law clerk went into the courthouse. Over the course of a conversation lasting only minutes, respondent, a former assistant district attorney and city councilman, asked Judge Garcia how to give a gift to a judge, and how to make a campaign contribution to a judge. Respondent than proceeded to tell Judge Garcia that he had a personal injury case in his court involving a "badly hurt" plaintiff and a defendant with "deep pockets" and that he needed a friend. Immediately after speaking of his case, respondent inquired of Judge Garcia: "what if I wanted to give you $5,000?" Subsequently, while motioning with his hands, respondent said "this [conversation] is just between me and you," whereupon Judge Garcia terminated the conversation and went inside the courthouse.
The Hearing Committee found only that respondent was negligent "in crafting a conversation with Judge Garcia that had the appearance of impropriety." The Disciplinary Board went one step further, finding that respondent's conduct was intentional, specifically finding:

*555 Having this political experience, along with his experience as an Assistant District Attorney, the respondent's assertion that he sought to only impress Judge Garcia or to obtain information about how to make a campaign contribution to a judge is not credible. Further, Respondent's comments to Judge Garcia that `this [the conversation] is just between us,' coupled with the fact that he wanted to speak to the judge alone, had asked the judge's law clerk to leave so he could speak to the judge by himself, and had a case pending before the judge, support the finding that the respondent intentionally engaged in improper ex parte communication with Judge Garcia.
Apparently, the Disciplinary Board, and now the majority of this Court, finds a lack of clear and convincing evidence that respondent was attempting to bribe the judge because respondent did not come right out and say "I'll give you $5,000.00 if you rule in my client's favor in the case before you." However, such flagrant evidence is not required, as even in a criminal case, specific intent is inferred from the circumstances. Here, Judge Garcia, who both the Hearing Committee and the Disciplinary Board found to be totally credible, testified:
And it was a physical thing that I tried to describe in my statement to your and I made a motion. It was almost like he shifted position and faced me and got into a personal contact with me and said, now, what if I wanted to give youor donate, I don't want to cast that in the wrong way, $5,000 and he looked down at the ground and went drew a little square and said this is just between me and you.

Finally, when Judge Garcia was asked to describe the context within which the comment was made and the motions he described, Judge Garcia stated:
But insofar as a time line is concerned, the reference to the money was notto me, was not made until after he made the statement to me that he had a personal injury case pending. That's when he turned to me and started talking about this is just between me and you.
The Court's failure to call this blatant and egregious conduct what it is, e.g., attempted bribery of a judge, is regrettable. Further, if the evidence presented in this case does not amount to clear and convincing evidence of attempted bribery, the Court is de facto creating a burden of proof which will be all but impossible for the Office of Disciplinary Counsel to meet.
For all of the above reasons, I respectfully dissent.
KNOLL, Justice, dissenting.
After reviewing the parties' contentions in this matter, I cannot agree that Barry Bolton's comments were either innocently or negligently made. To the contrary, I find Judge Garcia's assessment of his conversation with Bolton was accurate: Bolton attempted to offer him a "gift" or "campaign contribution" in exchange for favorable consideration of the personal injury case pending in Judge Garcia's division.
Although the testimony of Judge Garcia and Bolton differed in part, I find the circumstances which surrounded the conversation belie Bolton's contentions. From the outset, I find it telling Bolton asked Judge Garcia's law clerk to leave them alone in the parking lot. Thereafter, Bolton further asked Judge Garcia to "keep the matter between them." If Bolton believed his actions were above board, the need for secrecy was unnecessary.
*556 Bolton's contention that he simply wanted to find out how to make a contribution to Judge Garcia's political campaign is not worthy of belief. I find it significant Bolton was a former assistant district attorney and an elected city councilman. As an elected official, he would have been fully aware of this state's campaign finance laws. As a trained lawyer, Bolton was certainly capable of researching the campaign finance laws to determine the proper method of making a campaign contribution. I further find Bolton recognized his unfortunate and improper conduct when he paid $1,500 to a fellow attorney, his co-counsel in the personal injury litigation pending before Judge Garcia, to write a letter of apology to the judge.
The majority characterizes the evidence as simply an inappropriate ex parte communication with the judge. I disagree and find the evidence supports that Bolton's conduct was an attempt to affect the outcome of his pending case with the judge. This conduct falls within Standard 6.31 of the ABA's Standards for Imposing Lawyer Sanctions, which provides: "[d]isbarment is generally appropriate when a lawyer ... (b) makes an ex parte communication with a judge or juror with intent to affect the outcome of the proceeding, and causes serious or potentially serious injury to a party, or causes significant or potentially significant interference with the outcome of the legal proceeding." Accordingly, I would impose disbarment as the baseline sanction. For these reasons, I respectfully dissent.
NOTES
[1] Judge Garcia later testified that respondent indicated he wanted to give $5,000 to a judge. However, respondent denied that he referred to a specific amount.
[2] Respondent disputes having made the "deep pockets" comment.
[3] Standard 6.33 provides "[r]eprimand is generally appropriate when a lawyer is negligent in determining whether it is proper to engage in communication with an individual in the legal system, and causes little or no actual or potential injury to a party, or interference or potential interference with the outcome of the legal proceeding."
[4] Respondent provided affidavits from numerous individuals attesting to his good character and reputation in the community.
[5] The disciplinary board deviated from the committee's findings in two minor instances. It noted that the committee did not specifically find respondent told Judge Garcia that he represented a plaintiff in Judge Garcia's division who was "badly hurt" or that the defendant had "deep pockets." However, the board pointed out the undisputed testimony of both respondent and Judge Garcia revealed that respondent did, in fact, tell Judge Garcia that he represented a plaintiff who was "badly hurt." Moreover, the board found that "a reading of the record as a whole, particularly Judge Garcia's testimony," indicated the "deep pockets" allegation was proven by clear and convincing evidence by the ODC.
[6] Standard 6.31 provides "[d]isbarment is generally appropriate when a lawyer: (b) makes an ex parte communication with a judge or juror with intent to affect the outcome of the proceeding, and causes serious or potentially serious injury to a party, or causes significant or potentially significant interference with the outcome of the legal proceeding."

Standard 6.32 provides "[s]uspension is generally appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes interference or potential interference with the outcome of the legal proceeding."