ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 
 *
 

 11 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, William E. Lewis, an attorney licensed to practice law in Louisiana.
 

 UNDERLYING FACTS
 

 02-DB-005
 

 In June 1997, siblings Linda Smith and Gary Bell retained respondent to defend them in an ongoing lawsuit seeking to rescind a real estate sale. Ms. Smith and Mr. Bell paid respondent a $1,500 flat fee to handle the matter. Respondent enrolled as counsel of record in September 1997, but thereafter, he failed to communicate with his clients or provide requested status reports to them. By May 1998, Ms. Smith and Mr. Bell became dissatisfied with respondent’s failure to communicate. As a result, they terminated the representation and requested an accounting from respondent.
 

 In July 1998, Ms. Smith and Mr. Bell filed a complaint against respondent with the ODC. After requesting an extension of time to answer the complaint, respondent submitted an initial response to the ODC in October 1998. However, respondent failed to respond to several follow-up letters from the ODC, necessitating the |2issuance of a subpoena to compel his cooperation. On March 29, 1999, respondent finally provided Ms. Smith and Mr. Bell with an accounting. On June 8, 1999, respondent sent Ms. Smith and Mr. Bell their file and an $800 refund check, representing the unearned portion of the fee he was paid; however, the check was returned by the drawee bank for insufficient funds in respondent’s account. The check subsequently cleared in July 1999.
 

 The ODC alleges that respondent’s conduct in the Smith/Bell matter violated the following provisions of the Rules of Professional Conduct, as those rules were in effect at the time of the misconduct: Rules
 

 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(f)(6) (failure to refund an unearned fee), 1.15(c) (safekeeping property of clients or third persons), 1.16(a)(3) (failure to withdraw from representation upon being discharged), 1.16(d) (obligations upon termination of the representation), 3.2 (failure to expedite litigation), 3.4(c) (knowing disobedience of an obligation under the
 
 *446
 
 rules of a tribunal), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC in its investigation).
 

 05-DB-028
 

 Count I
 

 In September 1999, Dewitt Haynes pled guilty to a criminal charge, with the right to withdraw the plea if the State later filed a multiple bill against him. In October 2001, the State filed a multiple bill against Mr. Haynes. Respondent | ^appeared in court with Mr. Haynes for the multiple bill hearing on February 8, 2002, and again on February 20, 2002, when he was sentenced as a third felony offender. The ease was then closed.
 

 In May 2002, Mr. Haynes’ mother, Cynthia Haynes, retained respondent to reopen her son’s case. Respondent collected a fee of $2,500 from Mrs. Haynes, and told her that it would take about two weeks to get a court date. Thereafter, respondent did not pursue Mr. Haynes’ right to withdraw his 1999 guilty plea. He also did not return Mrs. Haynes’ telephone calls for information as to the status of the matter. Mrs. Haynes then learned that respondent had relocated out of state, and she retained another attorney, Marc Belloni, to pursue her son’s case. Mr. Haynes served two years of a nine-year sentence at the Louisiana State Penitentiary at Angola before Mr. Belloni obtained dismissal of the charges against Mr. Haynes in March 2004.
 

 The ODC alleges that respondent’s conduct in the Haynes matter violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5) (failure to refund an unearned fee), 1.16(d), and 8.4(d).
 

 Count II
 

 On
 
 January 11, 2002, Bernadette Mansion consulted with respondent concerning the representation of her son, Lionel Mansion, Jr., in a criminal case in federal court in New Orleans. On that date, respondent collected $1,500 from Mrs. Mansion as one-half of his fee. At some point thereafter, Mrs. Mansion learned that respondent had relocated out of state. She contacted respondent and was assured that he was still handling the case. On February 13, 2003, the federal grand jury returned an indictment against Mr. Mansion and two other persons. On February 19, 2003, respondent collected an additional $3,000 fee from Mrs. Mansion. On February 26, |42003, another attorney appeared in respondent’s place for Mr. Mansion’s arraignment. Mrs. Mansion then terminated respondent’s services and requested a refund of the $3,000 fee. On March 31, 2003, respondent faxed to the court a motion to withdraw as Mr. Mansion’s counsel of record; the motion was granted on April 17, 2003.
 
 [1]
 
 In September 2003, respondent advised Mrs. Mansion that he would provide her with an accounting and refund of the unearned portion of the fees he was paid; however, he failed to do so.
 

 In May 2004, Mrs. Mansion filed a complaint against respondent with the ODC. Respondent failed to reply to the complaint.
 

 The ODC alleges that respondent’s conduct in the Mansion matter violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f), 1.16(d), and 8.1(c).
 

 
 *447
 
 DISCIPLINARY PROCEEDINGS
 

 In January 2002, the ODC filed the formal charges in 02-DB-005. Respondent, through counsel, answered the formal charges and denied any misconduct. In November 2004, the parties filed a petition for consent discipline in this court, proposing that respondent be publicly reprimanded for his failure to communicate with Ms. Smith and Mr. Bell, his failure to promptly refund the unearned fee they paid, and his failure to cooperate with the ODC in its investigation. However, prior to any action by the court on the petition for consent discipline, the ODC filed a motion for remand, asserting that additional matters warranting further investigation had recently come to the ODC’s attention, and that in the interest of judicial economy, the consent discipline matter should be remanded to the ODC “until such time as the |subsequently filed complaints are resolved.” On December 10, 2004, we granted the motion to remand.
 
 In re: Lewis,
 
 04-2631 (La.12/10/04), 889 So.2d 225.
 

 In March 2005, the ODC filed the formal charges in 05-DB-028. Respondent, through counsel, answered the formal charges and denied any misconduct. Following the filing of respondent’s answer, the hearing committee chair signed an order consolidating both sets of formal charges.
 

 Hearing Committee Report
 

 This matter proceeded to a formal hearing on the merits. After considering the evidence and testimony presented at the hearing, the hearing committee filed its report. The committee made the following factual findings:
 

 In the Bell/Smith matter, respondent’s strategy was to take no formal action in the case, which he hoped would result in the dismissal of the lawsuit against Mr. Bell and Ms. Smith on grounds of abandonment. This strategy was valid and in fact later proved to be successful, as the lawyer who was retained after respondent was discharged achieved a dismissal of the litigation based on abandonment. However, the committee found that respondent’s lack of communication with his clients “and a host of other occurrences arising from his representation of Bell and Smith are problematic.” The committee noted that both Mr. Bell and Ms. Smith testified that they made numerous unsuccessful attempts to find out the status of their case from respondent. In May 1998, Mr. Bell terminated respondent’s representation. Thereafter, respondent did not provide a prompt accounting, nor promptly refund the unearned portion of the $1,500 fee he was paid. Similarly, respondent took over a year to return the client file, and then only after multiple formal and informal requests by the ODC. He ultimately released the file in June 1999 and refunded $800 of the | $1,500 fee in July 1999; there was no evidence offered of an actual accounting for the remaining $700. Based on these findings, and its determination that respondent’s testimony lacked credibility, the committee concluded that respondent failed to keep his clients reasonably informed of the status of their case, failed to properly account for the retainer payment, failed to promptly refund the unearned portion of a fee, and failed to cooperate in the investigation of the complaint, in violation of Rules 1.3, 1.4, 1.5(f)(5), 1.15(c), 1.16(a)(3) and (d), 8.1(c), and 8.4(d). The committee found the ODC did not prove by clear and convincing evidence that respondent failed to expedite the civil litigation central to the complaint, in violation of Rule 3.2.
 

 In the Haynes matter, the committee noted that as of the date of the hearing, respondent had not provided an accounting to Mr. Haynes or his mother for the fees he was paid, despite the fact that during
 
 *448
 
 the investigative process, the ODC attempted on at least four occasions to obtain the accounting, without success. The committee was impressed with Mrs. Haynes, who testified as a live witness, and found her testimony to be credible and convincing. The committee did not accept respondent’s explanations or his efforts to cast blame on Mr. Haynes or his mother, and specifically noted that to the extent that respondent’s version of material facts differs from Mrs. Haynes’ account, “the Committee finds Ms. Haynes much more credible than Respondent.” The committee was particularly offended by respondent’s attempts to explain away his receipt of funds as payment for something other than post-conviction relief, and by his ongoing failure to offer an accounting. The committee also took note that respondent’s misconduct was even more egregious because it caused Mr. Haynes to spend “an unnecessary additional two years in a state penitentiary.” Based on these findings, the committee determined that respondent neglected a legal matter, failed to keep a client reasonably informed of the status of 17the case, failed to advise his client of his relocation to another state, failed to account for fees and to refund unearned portions of the fee paid, and failed to protect Mr. Haynes’ interests when he withdrew from representation, in violation of Rules 1.3, 1.4, 1.5(f)(5), 1.16(d), and 8.4(d).
 

 In the Mansion matter, the committee noted some “striking similarities” to the Smith/Bell and Haynes matters “in terms of revealing a pattern and practice with respect to client communication, fee accounting and cooperation with a client and the disciplinary process.” With respect to the $3,000 payment that respondent requested Mrs. Mansion deposit into his checking account, the committee found respondent’s attempts to explain the payment “were tenuous, at best.” The committee observed that again, respondent seemed to cast blame on Mr. Mansion and his mother, whose testimony the committee found to be credible and convincing. On the other hand, the committee found respondent’s conflicting testimony not credible. Based on these findings, the committee determined that respondent failed to perform the requisite services in defense of his client, failed to advise his client of his relocation to another state, and failed to account for fees and to refund unearned portions of the fee paid. The committee also found that respondent failed to respond to the complaint filed against him, all in violation of Rules 1.3, 1.4,1.5(f)(5), 1.16(d), and 8.1(c).
 

 In sum, the committee observed:
 

 These violations represent a disturbing pattern. Even so, Respondent refuses to acknowledge any transgression, many of which are blatantly obvious by even a casual review of the evidence. There is a common, consistent theme among these violations, in which Respondent accepts a fee retainer, and then fails to communicate with his clients or account for the funds. And in two of the three cases, Respondent lacked diligence, in that he did not provide legal services that his clients reasonably expected to receive. When Respondent is discharged, he fails to cooperate in file transition, and when ODC attempts to investigate disciplinary complaints against him, he is | ¡^uncooperative. When questioned about these issues Respondent seems to consistently blame others, while accepting no personal responsibility or accountability.
 

 The committee found that respondent violated duties owed to his clients, the profession, and the legal system. His conduct was in some cases negligent or grossly negligent, while in other instances it was knowing, bordering on intentional. The
 
 *449
 
 injury caused by respondent’s conduct ranges from moderate to substantial. Considering all these factors, the committee determined that the baseline sanction is a period of suspension.
 

 The committee found the following aggravating factors to be present: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to cooperate with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, substantial experience in the practice of law (admitted 1979), and indifference to making restitution.
 
 [2]
 
 In mitigation, the committee found the following factors: absence of a prior disciplinary record and character and reputation.
 

 Considering the court’s prior jurisprudence in cases involving similar misconduct, the committee found that a three-year suspension is appropriate. The committee recommended that one year of the suspension be deferred, during which time respondent should be placed on probation and “receive ethics training.”
 
 [3]
 

 | ¡(Respondent filed an objection to the hearing committee’s report and recommendation.
 
 [4]
 

 Disciplinary Board Recommendation
 

 After review, the disciplinary board found that the hearing committee’s factual findings, including its credibility determinations, are not manifestly erroneous and adopted same. The board made the following determinations concerning the alleged violations of the Rules of Professional Conduct:
 

 Rule 1.3: The board found this rule was violated. In 02-DB-005, respondent failed to reply to inquiries from his clients and failed to act with reasonable diligence and promptness upon termination of the attorney-client relationship. In 05-DB-028, respondent failed to act in a prompt manner after being retained, in both counts. Specifically with regard to Mr. Haynes, respondent’s continued delay resulted in Mr. Haynes spending a significant amount of time in jail. Even if the clients in 05-DB-028 misinterpreted the scope of the representation, as alleged by respondent, he still failed to make his clients aware of the limited scope at the beginning of the relationship.
 

 Rule 1.4: The board found this rule was violated. In 02-DB-005, the committee found Mr. Bell and Ms. Smith’s allegations of unresponsiveness by respondent to be credible. Respondent claimed that he returned numerous telephone calls, but failed to offer proof of those calls. In 05-DB-028, respondent failed to maintain sufficient communication with his clients by failing to ensure that his clients could readily contact him after he relocated to Maryland.
 

 
 *450
 
 | lflRule 1.5(f): The board found this rule was violated. Rule 1.5(f) requires, among other things, that when a lawyer collects a fixed or flat fee and a fee dispute arises, the lawyer must immediately refund any unearned portion of the fee. In 02-DB-005, Mr. Bell and Ms. Smith paid respondent a $1,500 fixed fee. Although respondent was terminated in May 1998, he did not refund the unearned fees until July 1999. In Count I of 05-DB-028, respondent was paid $2,500 to pursue a post-conviction matter for Mr. Haynes, which he failed to do. Respondent maintains that he earned the $2,500 because he was only retained for the multiple bill hearing. However, the committee found otherwise. Respondent failed to return the unearned portion of this fee. The circumstances in Count II of 05-DB-028 are very similar to those in Count I. Respondent was paid a total of $4,500 to represent Mr. Mansion in a criminal matter. Respondent claims that the fee only applied to a limited representation and that the fee was earned. Again, the committee found otherwise. Respondent failed to return the fee, despite Mrs. Mansion’s requests. Therefore, respondent failed to promptly refund unearned fees to his clients, in violation of Rule 1.5(f).
 

 Rule 1.15(c): The board found this rule was violated in 02-DB-005. Respondent attempted to refund $800 to Mr. Bell and Ms. Smith by writing a check on March 15, 1999. However, that check was returned for insufficient funds. Therefore, although respondent knew for some time that Mr. Bell and Ms. Smith were demanding a refund, he failed to keep the disputed funds separate and secure.
 

 Rule 1.16(a): The board found this rule was violated in 02-DB-005. Despite being discharged by Mr. Bell in May 1998, respondent failed to return his clients’ file until June 8, 1999. Therefore, respondent failed to properly withdraw from the representation of Mr. Bell and Ms. Smith.
 

 ^JjjRule 1.16(d): The board found this rule was violated in both sets of formal charges by respondent’s failure to promptly return unearned fees.
 

 Rule 3.2: The board found this rule was not violated as charged in 02-DB-005. It was reasonable for respondent to take a “wait and see” approach to the lawsuit filed against his clients, although it does not appear his strategy was adequately communicated to the clients. Respondent would have succeeded with this approach because the lawsuit was ultimately dismissed for abandonment after he was terminated. Therefore, respondent did not fail to make reasonable efforts to expedite litigation consistent with the interests of his clients.
 

 Rule 3.4(c): The board found this rule was violated by respondent’s failure to cooperate with the ODC in the investigation of a complaint. In 02-DB-005, despite several requests and subpoenas by the ODC, respondent failed to provide the requested material in a timely manner. Therefore, respondent disobeyed his obligations to the disciplinary system, in violation of Rule 3.4(c).
 

 Rule 8.1(c): The board found this rule was violated by respondent’s failure to cooperate with the ODC in its investigation in 02-DB-005 and in Count II of 05-DB-028.
 

 Rule 8.4(a): The board found this rule was violated by respondent’s violation of the other rules charged.
 

 Rule 8.4(c): The board found this rule was not violated. Rule 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. M-though the committee found that respondent acted with a dishonest or selfish mo
 
 *451
 
 tive, nothing in the record reveals that respondent’s misconduct involved dishonesty or deceit. Therefore, the board found no violation of Rule 8.4(c).
 

 112RuIe 8.4(d): The board found this rule was violated in Count I of 05-DB-028, but not in 02-DB-005. In Count I of 05-DB-028, the committee found that respondent’s conduct caused Mr. Haynes to remain in jail for a significant period of time. The board agreed that this finding is not manifestly erroneous and that respondent’s conduct in that regard was prejudicial to the administration of justice, thereby violating Rule 8.4(d). However, the board found no basis for a violation of Rule 8.4(d) in 02-DB-005.
 

 Rule 8.4(g): The board found this rule was violated by respondent’s failure to cooperate with the ODC in its investigation in 02-DB-005.
 

 Based on these findings, the board determined that respondent’s conduct was a combination of negligent, grossly negligent, and knowing misconduct. Respondent violated duties owed to his clients, the profession, the legal system, and the public, causing moderate to substantial injury to his clients. Relying on the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the board determined that suspension is the baseline sanction.
 

 The board found numerous aggravating factors present, noting that the most significant is respondent’s refusal to acknowledge the wrongful nature of his conduct. The board also expressed concern over respondent’s attempts to shift blame to others for his misconduct, including his former attorney. In aggravation, the board found prior disciplinary offenses,
 
 [5]
 
 a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to cooperate with the rules or orders of the disciplinary agency, vulnerability | iaof the victims, substantial experience in the practice of law, and indifference to making restitution. The board found no mitigating factors are present.
 
 [6]
 

 Considering the court’s prior jurisprudence involving misconduct similar to respondent’s, the board agreed that a substantial period of suspension is warranted, and that the three-year suspension recommended by the committee appears to be appropriate. However, the board found that deferral of a period of the suspension, as recommended by the committee, is not justified in light of the absence of mitigating factors. The board also agreed with the ODC that deferral will serve no practical purpose given the fact that respondent no longer resides in Louisiana.
 

 
 *452
 
 Based on this reasoning, the board recommended that respondent be suspended from the practice of law for three years.
 
 [7]
 
 The board also recommended that respondent be assessed with all costs and expenses of these proceedings.
 

 Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
 

 1 ^DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Quaid,
 
 94-1316 (La.11/30/94), 646 So.2d 343;
 
 Louisiana State Bar Ass’n v. Boutall,
 
 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings.
 
 See In re: Caulfield,
 
 96-1401 (La.11/25/96), 683 So.2d 714;
 
 In re: Pardue,
 
 93-2865 (La.3/11/94), 633 So.2d 150.
 

 Respondent is charged with neglecting three separate legal matters, failing to communicate with his clients, failing to account for funds received from the clients or on their behalf, failing to properly withdraw from the cases upon relocating out of state, and failing to cooperate with the ODC in its investigation. Respondent’s clients in the three matters testified at the hearing and were all found by the hearing committee to be credible and believable. Based upon that testimony, the committee determined that respondent’s practice was to accept a legal fee, fail to communicate with his clients or account for the funds, and then fail to cooperate in the transition of the file after he was discharged. The committee simply did not believe respondent’s testimony to the contrary, finding him to lack credibility in each matter at issue. This finding is supported by the record.
 
 [8]
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In considering 115that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 
 *453
 
 In
 
 In re: Trichel,
 
 00-1304 (La.8/31/00), 767 So.2d 694, we recognized that the baseline sanction for neglect of a client matter, failure to communicate, and failure to properly terminate the representation of one client was a one-year suspension from the practice of law. However, we found the aggravating factors in the case, particularly the respondent’s prior discipline for similar misconduct, justified raising the sanction to an eighteen-month suspension. The instant matter involves multiple counts of neglect of legal matters and failure to communicate involving several clients, as well as charges of failure to refund unearned fees, failure to cooperate, and the failure of respondent to properly terminate the representation of his clients. Consequently, the baseline sanction in this case is greater than the one-year suspension identified in
 
 Trichel.
 
 Moreover, there are no mitigating factors present here which justify a downward deviation from the baseline. To the contrary, the numerous and serious aggravating factors convince us that a lengthy suspension is warranted.
 

 Accordingly, we will suspend respondent from the practice of law for two years.
 

 ImDECREE
 

 Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that William E. Lewis, Louisiana Bar Roll number 8855, be and he hereby is suspended from the practice of law for two years. It is further ordered that respondent render an accounting to his clients subject of the formal charges and make restitution of any unearned fees. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 JOHNSON, J., dissents in part, and would impose a shorter period of suspension.
 

 *
 

 Calogero, C.J., retired, participated in this de-cisión which was argued prior to his retirement.
 

 [1]
 

 . As of April 2, 2003, Mr. Mansion was represented by attorney Patrick Fanning.
 

 [2]
 

 . The committee refused to consider in mitigation respondent's $800 "refund” to Mr. Bell and Ms. Smith, noting that the payment was made long after the complaint was filed, and after significant effort and frustration on the part of the ODC. Under the ABA's
 
 Standards for Imposing Lawyer Sanctions,
 
 forced or compelled restitution is a factor which is neither aggravating nor mitigating.
 

 [3]
 

 . The committee further recommended that "the Maryland Bar Association or equivalent licensure authority in the State of Maryland be notified of any final sentence.” However, respondent is not licensed to practice law in Maryland.
 

 [4]
 

 .The ODC initially objected to the sanction recommended by the committee as unduly lenient; however, the ODC subsequently withdrew its objection, while noting that "the one year deferral with probation may be of no consequence for a lawyer who no longer resides within the state.”
 

 [5]
 

 . The committee found respondent had no prior discipline because there was no evidence of such in the record or in the published decisions of the board or the court. However, the board's records confirmed that respondent received a formal private reprimand with notice in 1991 and an admonition in 1995. The board conceded that this conduct may appear on its face to be remote in time, but pointed out that the misconduct in 02-DB-005 occurred between 1997 and 1999. Thus, the board concluded that while the 1991 reprimand may be remote in time, the 1995 admonition is certainly not, warranting a finding in aggravation of a prior disciplinary history.
 

 [6]
 

 . In mitigation, the committee found the absence of a prior disciplinary record and character and reputation. The board rejected the first factor for the reasons discussed in note 5,
 
 supra.
 
 The board also rejected the mitigating factor of good character and reputation. The board noted that respondent testified on his own behalf and did not offer the testimony of any other witnesses. The committee found respondent's testimony was not credible. Further, respondent offered only four exhibits, none of which reference his character or reputation. Therefore, the board found this mitigating factor was not proven.
 

 [7]
 

 . The committee also recommended that respondent receive ethics training, which the board agreed would be useful. However, recognizing that such conditions should not be addressed until respondent applies for reinstatement, the board declined to impose this condition.
 
 See In re: Welcome,
 
 02-2662 (La. 1/24/03), 840 So.2d 519 (imposing an eighteen-month suspension from the practice of law, but declining to impose a two-year period of supervised probation with conditions because “such issues, along with any other relevant factors, may be addressed if and when respondent applies for reinstatement.”).
 

 [8]
 

 . This court generally accepts the credibility evaluations made by those committee members “who were present during respondent's testimony and who act as the eyes and ears of this court.”
 
 In re: Bolton,
 
 02-0257 (La.6/21/02), 820 So.2d 548.