PER CURIAM.*
h This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Stephen P. Callahan, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public. In re: Callahan, 09-6404 (La.2/20/09), 2 So.3d 431.
UNDERLYING FACTS
Counts I & II — The Brown Matter
In September 2004, Mr. and Mrs. Ernest Brown paid respondent $3,500 to file an application for post-conviction relief on behalf of their son, Arlen Brown. Respondent subsequently prepared the application for post-conviction relief, but he did not file it and he did not communicate with his client. As a result, Mr. Brown filed a pro se application for post-conviction relief. Thereafter, Mr. Brown made several written requests for his file, a trial transcript, and the return of the fee paid to respondent, all to no avail. According to Mr. Brown, his application for post-conviction relief was denied because he did not submit the trial transcript along with the application.
Both Mr. Brown and his parents filed complaints against respondent with the ODC. Respondent failed to cooperate in the investigation of the complaints.
|2The ODC alleged respondent violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.15(d) (failure to timely remit funds to a client or third person), 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4(a) (violation of the Rules of Professional Conduct) of the Rules of Professional Conduct.
Count III — The Daigle Matter
In December 2006, Stephen Daigle, Sr. retained respondent to represent his son, Stephen Daigle, Jr., in a criminal matter. Mr. Daigle, Sr. paid $1,750 towards respondent’s $3,500 fee, with the remaining balance to be paid prior to trial. In January 2007, respondent attempted to visit Mr. Daigle, Jr. in jail. When he arrived, respondent was informed that Mr. Daigle, Jr. had been transferred to federal custody in Alabama. Thereafter, Mr. Daigle, Sr. telephoned respondent’s office several times to request an accounting and a refund of unearned fees, but he was only able to leave messages with respondent’s secretary. Mr. Daigle, Sr. also submitted two written requests for an accounting and a refund of fees, to no avail.
In April 2007, Mr. Daigle, Sr. filed a complaint against respondent with the ODC. Respondent failed to cooperate in the investigation of the complaint.
*768 The ODC alleged respondent violated Rules 1.3, 1.15(d), 8.1(c), and 8.4(a) of the Rules of Professional Conduct.
Count IV — The Amacker Matter
In September 2005, Michael Amacker paid respondent $1,500 to represent him in a criminal matter. Thereafter, Mr. Amacker wrote numerous letters to respondent |..¡inquiring about the status of his case, but he never received a reply. He also sent several letters requesting a refund of the fee he paid, to no avail.
In June 2007, Mr. Amacker filed a complaint against respondent with the ODC. Respondent failed to cooperate in the investigation of the complaint.
The ODC alleged respondent violated Rules 1.3, 1.15(d), 8.1(c), and 8.4(a) of the Rules of Professional Conduct.
Count V — The Price Matter
In 2003, Tony Price paid respondent $3,000 to represent him in a criminal matter. Thereafter, Mr. Price wrote numerous letters to respondent inquiring about the status of the case, to no avail. Respondent refused Mr. Price’s phone calls, never visited him in jail, and responded to him only once. No hearings for Mr. Price’s case were scheduled and no documents were ever filed on Mr. Price’s behalf.
In September 2007, Mr. Price filed a complaint against respondent with the ODC. Respondent failed to cooperate in the investigation of the complaint.
The ODC alleged respondent violated Rules 1.3, 1.15(d), 8.1(c), and 8.4(a) of the Rules of Professional Conduct.
Count VI — The Thomas Matter
In November 2002, Irene Thomas paid respondent $2,500 to file an application for post-conviction relief on behalf of her son, Raymond Williams. According to Ms. Thomas, her last contact with respondent was in October 2007, at which time respondent advised that the matter would be resolved and that her son would be released that year. Thereafter, Ms. Thomas made several attempts to contact respondent, to no avail. According to Ms. Thomas, respondent failed to perform any work in the matter.
|4In August 2008, Ms. Thomas filed a complaint against respondent with the ODC. Respondent failed to cooperate in the investigation of the complaint.
The ODC alleged respondent violated Rules 1.4, 1.5(f) (payment of fees in advance of services), 1.15(d), 8.1(c), and 8.4(a) of the Rules of Professional Conduct.
Count VII — The Celestine Matter
In 2008, Ezeldia Celestine retained respondent to represent her son in a criminal matter, including a bond reduction. Ms. Celestine initially paid respondent $1,750 towards his $3,500 fee to handle the matter, with the remaining balance to be paid prior to trial. Following a hearing in the criminal case, Ms. Celestine’s son was released. According to Ms. Celestine, respondent never visited her son in jail, never filed for a bond reduction, and never appeared in court on her son’s behalf. When Ms. Celestine requested a refund of the fee she paid, respondent advised that he had performed two hours of work in the matter, but agreed to refund the unearned portion of the fee, which he failed to do.
In November 2008, Ms. Celestine filed a complaint against respondent with the ODC. Respondent failed to cooperate in the investigation of the complaint.
The ODC alleged respondent violated Rules 1.3, 1.4, 1.5(f), 1.15(d), 8.1(c), and 8.4(a) of the Rules of Professional Conduct.

Count VIII

In February 2009, the ODC received a letter from Judge Timothy Ellender of the 32nd Judicial District Court for the Parish *769 of Terrebonne. Respondent had appeared in Judge Ellender’s courtroom on January 20, 2009 to defend a client in a scheduled second-degree murder trial. Judge Ellen-der reported that on that date, respondent appeared “disheveled and shaken” and that his speech was “somewhat | .^incoherent.”[1] Respondent denied that he had taken narcotic prescription pain medication prior to his appearance, but he voluntarily submitted to a drug test and tested positive for opiates.[2]
The ODC alleged respondent violated Rules 1.1(a) (failure to provide competent representation to a client), 8.4(a), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
Count IX — The Rhodes Matter
In September 2008, Sandra Rhodes paid respondent $2,500 to handle a child custody matter. In preparation for a hearing in the case, respondent met with two potential witnesses, spoke to a third potential witness over the telephone, and took possession of two audio tapes. Respondent subsequently informed Ms. Rhodes that a court date was scheduled in the case in Lafourche Parish in February 2009. However, when Ms. Rhodes contacted the clerk of court in Lafourche Parish to determine the exact date of the hearing, she learned that nothing had ever been filed with the court concerning her child custody matter.
Thereafter, Ms. Rhodes visited respondent’s office and delivered a letter by which she terminated respondent’s services and requested a refund of the fee she paid. During the visit, Ms. Rhodes requested a copy of her file, only to discover that her file consisted of a single piece of paper containing her name and telephone number.
In February 2009, Ms. Rhodes filed a complaint against respondent with the ODC. Respondent failed to cooperate in the investigation of the complaint.
UThe ODC alleged respondent violated Rules 1.3, 1.4, 1.15(d), 8.1(c), and 8.4(a) of the Rules of Professional Conduct.
Count X — The Wolfe Matter
In April 2008, Paula Wolfe consulted with respondent about an outstanding warrant for her arrest. Ms. Wolfe paid $1,500 towards respondent’s $3,000 fee, with the remaining balance to be paid in the event she was arrested. Prior to respondent performing any work on her' behalf, Ms. Wolfe discovered that she did not have any outstanding warrants. Thereafter, Ms. Wolfe attempted to contact respondent to request a refund, to no avail.
In March 2009, Ms. Wolfe filed a complaint against respondent with the ODC. Respondent failed to cooperate in the investigation of the complaint.
The ODC alleged respondent violated Rules 1.15(d), 8.1(c), and 8.4(a) of the Rules of Professional Conduct.
Count XI — The Reed Matter
In September 2006, Sarah Reed paid respondent $3,000 to file an application for post-conviction relief on behalf of her son, Van Wolfe, III. Respondent prepared and filed the application for post-conviction relief. The matter was twice set for hearing and continued on respondent’s motion. When the hearing was re-scheduled for January 2008, respondent failed to appear. Thereafter, respondent failed to appear for any further hearings, and failed to respond *770 to Ms. Reed’s request for a refund of the fee she paid.
In March 2009, Ms. Reed filed a complaint against respondent with the ODC. Respondent failed to cooperate in the investigation of the complaint.
|7The ODC alleged respondent violated Rules 1.3, 1.4, 1.15(d), 8.1(c), and 8.4(a) of the Rules of Professional Conduct.
Count XII — The Howard Matter
In February 2009, Maryland Melissa Howard paid respondent $700 to assist her in regaining possession of a confiscated vehicle. Prior to performing any work in the matter, respondent was interimly suspended from the practice of law. Respondent nevertheless failed to refund the fee paid by Ms. Howard.
In April 2009, Ms. Howard filed a complaint against respondent with the ODC. Respondent failed to cooperate in the investigation of the complaint.
The ODC alleged respondent violated Rules 1.4, 1.15(d), 8.1(c), and 8.4(a) of the Rules of Professional Conduct.
Count XIII — The Bergeron Matter
In April 2009, Deana Bergeron filed a complaint against respondent with the ODC. Respondent failed to cooperate in the investigation of the complaint.
The ODC alleged respondent violated Rules 8.1(c) and 8.4(a) of the Rules of Professional Conduct.
Count XIV — The McKemie Matter
In April 2009, Christopher McKemie filed a complaint against respondent with the ODC. Respondent failed to cooperate in the investigation of the complaint.
The ODC alleged respondent violated Rules 8.1(c) and 8.4(a) of the Rules of Professional Conduct.
Is Count XV — The Wendt Matter
In April 2008, Troy Wendt paid respondent $2,000 to handle a criminal matter. Respondent appeared in court on Mr. Wendt’s behalf on November 3, 2008 and requested an extension of time to file motions, which request was granted. Thereafter, respondent failed to appear for two hearings in the matter, failed to communicate with Mr. Wendt, and failed to refund the unearned portion of the fee paid by Mr. Wendt.
In June 2009, Mr. Wendt filed a complaint against respondent with the ODC. Respondent failed to cooperate in the investigation of the complaint.[3]
Count XVI — The Lyons Matter
In November 2008, Susie Lyons paid respondent $2,000 to represent her daughter in a criminal matter. Thereafter, respondent failed to communicate with Ms. Lyons and failed to appear for a February 5, 2009 pre-trial conference in the matter. Prior to her daughter’s next scheduled court appearance on March 5, 2009, Ms. Lyons attempted to contact respondent, only to discover that his telephone had been disconnected. When Ms. Lyons was finally able to contact respondent’s secretary, she advised Ms. Lyons to retain new counsel. Respondent failed to refund the unearned portion of the fee paid by Ms. Lyons.
In June 2009, Ms. Lyons filed a complaint against respondent with the ODC. Respondent failed to cooperate in the investigation of the complaint.
*771 The ODC alleged respondent violated Rules 1.3, 1.4, 1.15(d), 8.1(c), and 8.4(a) of the Rules of Professional Conduct.
^DISCIPLINARY PROCEEDINGS
In October 2009, the ODC filed formal charges against respondent, as set forth above. Respondent failed to answer the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.

Hearing Committee Report

After considering the ODC’s deemed admitted submission, the hearing committee determined the factual allegations of the formal charges were admitted and proven by clear and convincing evidence. Based on the deemed admitted facts, the committee determined that respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a), 1.3, 1.4,1.5(f), 1.15(d), 8.1(c), and 8.4(a).[4]
The committee found respondent knowingly and intentionally violated duties owed to his clients, the public, the legal system, and the profession. His conduct caused actual harm to his clients. Respondent failed to adequately communicate with his clients and failed to diligently pursue legal matters. Furthermore, despite numerous requests, there were several instances where respondent failed to return files and unearned fees. After considering the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined the applicable baseline sanction is disbarment.
ImThe committee found the following aggravating factors present: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, substantial experience in the practice of law (admitted 1984), and indifference to making restitution. The committee concluded that no mitigating factors exist.
Relying on Guideline 1 (repeated or multiple instances of intentional conversion of client funds with substantial harm) of the permanent disbarment guidelines and this court’s prior jurisprudence, the committee recommended that respondent be permanently disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

Disciplinary Board Recommendation

After review, the disciplinary board determined that respondent violated the Rules of Professional Conduct as alleged in most counts of the formal charges.[5] How *772 ever, in a few instances, the board found that the ODC did not allege sufficient facts in the formal charges, or present sufficient additional proof of respondent’s misconduct, to establish a violation. For example, in Count VI, the board determined there was not clear and convincing evidence to establish that respondent failed to communicate with his client, in violation of Rule 1.4, or failed to hold disputed funds |nin trust, in violation of Rule 1.5(f). The board likewise found there was not clear and convincing evidence to establish violations of Rule 1.4 in connection with Counts XI and XII, or of Rule 1.5 in Counts VII and XV.
Based on these findings, the board determined that respondent violated duties owed to his clients, the public, the legal system, and the profession. By their very nature, these acts were both knowing and intentional. Respondent caused actual harm to clients whose matters he abandoned and whose unearned fees he kept. Relying on the ABA’s Standards for Imposing Lawyer Sanctions, the board determined disbarment is the baseline sanction.
The board agreed with the aggravating factors found by the committee. In mitigation, the board recognized that respondent has no prior disciplinary record.
Further relying on Guideline 1 of the permanent disbarment guidelines and this court’s prior jurisprudence, the board recommended that respondent be permanently disbarred. The board also recommended that respondent be ordered to make restitution of unearned fees to the persons entitled to receive them, or to the Client Assistance Fund, as appropriate.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57.
| i;>In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan, 01-3058 (La.1/10/03), 838 So.2d 715.
The record in this deemed admitted matter supports a finding that respondent neglected his clients’ legal matters, failed to communicate with his clients, failed to refund unearned legal fees, and failed to cooperate with the ODC. Based on these facts, we agree that he violated the Rules *773 of Professional Conduct as found by the disciplinary board.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 518 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
The record supports a finding that respondent engaged in knowing and intentional misconduct. He violated duties owed to his clients, the public, the legal | ^system, and the legal profession, causing actual harm. Considering the numerous aggravating factors present in this case, and the relative lack of mitigating factors, disbarment is clearly appropriate. However, in their respective reports, the hearing committee and the disciplinary board have concluded that respondent’s offenses are so egregious that he should be permanently prohibited from applying for readmission to the bar.
We agree. In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might result in permanent disbarment. Respondent’s conduct implicates Guideline 1, in that he converted client funds in eleven separate matters totaling $23,700.[6] Accordingly, respondent must be permanently disbarred.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the - name of Stephen P. Callahan, Louisiana Bar Roll number 14127, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Respondent is ordered to make restitution of unearned fees as recommended by the disciplinary board. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Chief Justice Kimball not participating in the opinion.

. The incident reported by Judge Ellender prompted the ODC to file a petition for interim suspension. We granted the petition on February 20, 2009.

. According to Judge Ellender, respondent takes narcotic pain medication as a result of an injury to his back.

. The formal charges did not allege any specific Rules of Professional Conduct which were violated in connection with this count; however, in its deemed admitted submission filed with the hearing committee, the ODC alleged respondent’s conduct violated Rules 1.5, 8.1(c), and 8.4(a).

. In its report, the committee also found that respondent violated Rules 1.16 (terminating the representation of a client) and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), neither of which were charged in the formal charges. The committee did not discuss the Rule 8.4(d) violation alleged in connection with Count VIII of the formal charges.

. The board frequently noted that it was finding certain rule violations in this deemed admitted matter because the hearing committee had implicitly accepted a complainant's version of events, as set forth in the complaint, and rejected respondent's denials of misconduct, as set forth in his response to the complaint. In support, the board cited In re: Bolton, 02-0257 (La.6/21/02), 820 So.2d 548, in which this court remarked upon the importance of credibility evaluations made by the *772 members of the hearing committee, “who act as the eyes and ears of this court.” However, it is readily apparent from a reading of Bolton that this statement was not intended to apply in a deemed admitted matter, but rather in the context of the committee's evaluation of live witness testimony.

. The board erroneously calculated the fee in Count III as $3,500; however, the record reflects that the client paid only half that amount to respondent. The board correctly acknowledged that some portion of the fee collected in Counts VII and XI may have been earned by respondent because he performed some work in furtherance of the client's objectives.